## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MOMS FOR AMERICA, *et al.*

            Plaintiffs,

v.

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**, *et al.*,

            Defendants.

Case No. 3:24-cv-00650-MMH-MCR

## DEFENDANTS' MOTION TO DISMISS COMPLAINT

Pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants hereby move to dismiss the Complaint, ECF No. 1. For the reasons stated in the Memorandum of Law below, the Court should dismiss the Complaint for lack of subject matter jurisdiction or failure to state a claim.

## MEMORANDUM OF LAW

In the Public Readiness and Emergency Preparedness (PREP) Act, Congress struck a careful balance to ensure access to vital countermeasures in response to public health emergencies. Concerned that the specter of litigation could impede development of and access to such countermeasures, Congress granted broad immunity in connection with the provision of countermeasures covered by a PREP Act declaration issued by the Secretary of Health and Human Services. At the same time, Congress provided that where administration of a covered countermeasure directly causes serious physical injury or death, the injured person or her survivors can seek compensation in a no-fault administrative claims process — the Countermeasures

Injury Compensation Program (CICP).  Plaintiffs ask this Court to unravel this statutory scheme, but they fail to plead a basis for this Court's subject-matter jurisdiction or state a valid claim.

This Court lacks subject-matter jurisdiction over Plaintiffs' claims.  In Count VI, Plaintiffs challenge the Secretary's PREP Act declarations under the Administrative Procedure Act (APA), but Congress expressly precluded judicial review of such declarations.  42 U.S.C. § 247d-6d(b)(7).  Therefore, the APA does not apply, and this Court lacks jurisdiction.  5 U.S.C. § 701(a)(1).  Plaintiffs' remaining claims seek injunctive or declaratory relief against the federal government.  But Plaintiffs lack standing to seek such relief because it would not redress their alleged injury of being unable to sue non-party manufacturers and administrators of COVID-19 vaccines.  Such non-parties would not be bound by a judgment from this Court and could continue to assert PREP Act immunity even if this Court granted judgment against the federal government.

Plaintiffs also fail to state a valid claim.  Plaintiffs' procedural due process claim fails at the outset because the PREP Act's immunity provisions do not deprive them of a protected property interest.  It is well established that there is no vested interest in the continued operation of any rule of common law.  *See Ducharme v. Merrill-National Labs.*, 574 F.2d 1307, 1309 (5th Cir. 1978) (per curiam).  Even if the PREP Act implicated a protected interest, Plaintiffs fail to show any constitutional inadequacy in the CICP's procedures.

Plaintiffs' substantive due process claims fare no better.  Substantive due process is limited to protecting "deeply rooted" "fundamental rights and liberties" that are "implicit in the concept of ordered liberty."  *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)).  Plaintiffs identify no such rights at stake.  Rather, their substantive due process claim is merely a repackaging of their failed procedural due process claim.

Plaintiffs also claim that assigning compensation claims to an administrative tribunal violates the separation of powers and the Seventh Amendment right to a jury trial.  But the federal government is immune from suit unless it waives sovereign immunity, and "courts are required to 'strictly observe' all terms and conditions that accompany a waiver of sovereign immunity."  *Smith v. United States*, 14 F.4th 1228, 1231 (11th Cir. 2021) (quoting *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015)).  As it did in the PREP Act, Congress therefore may validly condition a waiver of sovereign immunity on proceeding in an administrative tribunal rather than a court, without a jury.  *See United States v. Babcock*, 250 U.S. 328, 330-31 (1919); *Lehman v. Nakshian*, 453 U.S. 156, 160 (1980).

## BACKGROUND

### I.     The Public Readiness and Emergency Preparedness (PREP) Act

In 2005, Congress enacted the PREP Act, Pub. L. No. 109-148, 119 Stat. 2680, Div. C (2005) (codified at 42 U.S.C. §§ 247d-6d, 247d-6e), to encourage the development and deployment of medical countermeasures to combat public health

emergencies.[1]  Two aspects of the PREP Act operate in tandem to achieve this result: broad immunity from liability for those involved in making covered countermeasures available, and an opportunity for those injured by covered countermeasures to seek compensation from the federal government through a no-fault administrative claims program, the CICP.

The PREP Act's provisions come into effect when the Secretary of Health and Human Services issues a declaration after making the determination that a disease, health condition, or other threat to health constitutes a public health emergency or there is a credible risk that it may in the future constitute such an emergency and that the manufacture, testing, development, distribution, administration, or use of one or more countermeasures is covered.  42 U.S.C. § 247d-6d(b)(1).  In deciding whether to issue such a declaration with respect to a countermeasure, "the Secretary shall consider the desirability of encouraging the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, and use of such countermeasure."  *Id.* § 247d-6d(b)(6).  The subsection authorizing the Secretary to issue declarations states that "[n]o court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection."  *Id.* § 247d-6d(b)(7).

---

[1] *See* Cong. Rsch. Serv., LSB10584, Comp. Prog. for Potential COVID-19 Vaccine Injuries 2 (2021), https://crsreports.congress.gov/product/pdf/LSB/LSB10584 ("CRS Rpt.").

A PREP Act declaration triggers immunity from liability "with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure," with the exception of claims for willful misconduct.  *Id.* § 247d-6d(a)(1).

On March 17, 2020, the Secretary issued a PREP Act declaration, effective on February 4, 2020, relating to COVID-19.  *See Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19*, 85 Fed. Reg. 15,198 (Mar. 17, 2020).  The Secretary "determined that the spread of SARS-CoV–2 or a virus mutating therefrom and the resulting disease COVID–19 constitutes a public health emergency."  *Id.* at 15,201.  He declared liability immunity in effect for the "manufacture, testing, development, distribution, administration, and use of the Covered Countermeasures."  *Id.*  He defined "Covered Countermeasures" broadly to include

> "any antiviral, any other drug, any biologic, any diagnostic, any other device, or *any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19*, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product."

*Id.* at 15,202 (emphasis added).  The Secretary subsequently issued eleven amendments to the COVID-19 PREP Act declaration, each of which was published in the Federal Register and is collected on HHS's website.  *See Public Readiness and Emergency Preparedness (PREP) Act*, Admin. for Strategic Preparedness & Response, https://aspr.hhs.gov/legal/PREPact/pages/default.aspx.

## II.   The Countermeasures Injury Compensation Program (CICP)

### A.   Applicable Statutes and Regulations

The PREP Act authorized the Secretary to create the CICP.  Under the CICP, those who allege they have been seriously injured by, and survivors who allege that a decedent died from, the administration or use of a covered countermeasure can bring a claim for compensation from the federal government in a no-fault administrative claims process.  *See generally id.* § 247d-6e.  Compensation is available under the statute for serious physical injury or death "directly caused by the administration or use of a covered countermeasure pursuant to such declaration."  *Id.* § 247d-6e(a), (b)(1).  A determination "as to the direct causation of a covered injury" must be "based on compelling, reliable, valid, medical and scientific evidence."  *Id.* § 247d-6e(b)(4).  Congress imposed a one-year deadline for filing claims.  *Id.* (incorporating procedural provisions from 42 U.S.C. § 239a); *id.* § 239a(d).[2]

The Department of Health and Human Services (HHS) and its component, the Health Resources and Services Administration (HRSA), promulgated regulations establishing and governing the CICP.  *See* 42 C.F.R. Part 110.  The regulations provide that an individual who suffered a serious injury directly caused by a covered countermeasure, or the survivor of a decedent whose death was directly caused by an injury caused by a covered countermeasure, can file a claim for compensation.  42

---

[2] Certain requesters also have an additional one year to file a claim from the date of publication of or amendment to a Countermeasures Injury Table if the effect of the publication or amendment is that a requester who previously could not establish a Table injury can now do so.  42 U.S.C. § 247d-6e(b)(5)(B) (incorporating 42 U.S.C. § 239b(a)(2)); 42 C.F.R. § 110.42(f).

C.F.R. § 110.10(a). The claim generally must be filed within one year of administration or use of the covered countermeasure. *Id.* § 110.42(a). A requester must submit a request package with the documentation necessary to determine eligibility, such as medical records and (in a claim for death benefits) the death certificate and documentation that the requester is an eligible survivor. *Id.* §§ 110.41, 110.50, 110.51, 110.52.

### B.    The Process For Reviewing CICP Claims

The CICP's regulations govern many aspects of the determination of CICP claims, *see generally* 42 C.F.R. Part 110, and the process for submission of CICP claims is also outlined on the CICP's website. Countermeasures Injury Compensation Program (CICP) Filing Process, https://www.hrsa.gov/cicp/filing-process ("*CICP Filing Process*"). If a requester has not submitted sufficient documentation to determine whether the requester is eligible for compensation, the program will inform the requester and give the requester an opportunity to submit the necessary documentation. 42 C.F.R. § 110.71. The CICP's medical staff conduct an initial medical review of request packages. *CICP Filing Process*

The Director of the Division of Injury Compensation Programs (DICP) (currently Captain George Reed Grimes, M.D., M.P.H.) then makes determinations concerning whether a requester is eligible for compensation, exercising authority delegated from the Secretary. *See* 42 C.F.R. §§ 110.3(y), 110.73-110.74. If the requester is eligible for compensation, the program will inform the requester what documentation the requester must submit to establish the amount of compensation.

*See id.* § 110.60; *see also id.* §§ 110.80-110.82 (regulations setting forth how benefits are calculated).   The Director then determines the amount of benefits and notifies the requester in a written decision letter.   *See id.* § 110.73.   If the Director determines that the requester is not eligible for compensation, the Director will issue a written decision letter to the requester, explaining the basis for the disapproval.   *See id.* § 110.74; Compl. ¶ 167.   Therefore, regardless of how the claim is resolved, the requester will receive a written decision letter setting forth the basis of the Director's determination.

A requester may seek reconsideration, of either a determination that the requester is not eligible for benefits or the amount of such benefits, by submitting a letter seeking reconsideration within 60 days of the decision on the requester's claim. 42 C.F.R. § 110.90(a).   A qualified panel, independent of the CICP, reviews the reconsideration request (including the documentation previously submitted to the CICP) and makes a recommendation as to the merits of the claim.   *Id.* § 110.90(c). The Associate Administrator of the Health Systems Bureau (HSB), a bureau within HRSA, reviews the panel's recommendation and makes a final written determination of eligibility or benefits amount, which is sent to the requester or his or her representative.   *Id.* § 110.90(c).   The Associate Administrator's determination is not subject to further administrative or judicial review.   *See* 42 C.F.R. §§ 110.90(c), 110.92; 42 U.S.C. § 247d-6e(b)(4); 42 U.S.C. § 239a(f)(2).

## III.    Plaintiffs' Complaint

Plaintiffs are a nonprofit organization, Moms for America, that alleges that it advocates for "[m]edical freedom, protection from medical harm, and the capacity of

8

the medically injured to obtain relief for their injuries," Compl. ¶ 16, and nine individual members of Moms for America, *id.* ¶¶ 16-23. The individual Plaintiffs allege either that they suffered a serious injury caused by a COVID-19 vaccine or that a family member's death was caused by a COVID-19 vaccine. *See id.* ¶¶ 119-253. The individual Plaintiffs "desire to bring common law and state law claims . . . against manufacturers and administrators" of COVID-19 vaccines. *Id.* ¶ 24. Six of the individual Plaintiffs did not request compensation under the CICP. *Id.* ¶¶ 185, 203-04, 218, 239. One Plaintiff had her CICP claim denied, *id.* ¶ 167, and the other two have pending CICP claims, *id.* ¶¶ 143, 253.

Plaintiffs bring this lawsuit against the U.S. Department of Health and Human Services (HHS), HHS's component, the U.S. Health Resources and Services Administration (HRSA), the United States, the Secretary of Health and Human Services, and the President. *Id.* ¶¶ 29. Plaintiffs claim that the PREP Act violates the separation of powers (Count I), *id.* ¶¶ 254-73, procedural due process (Count II), *id.* ¶¶ 274-87, substantive due process (Counts III and IV), *id.* ¶¶ 288-306, and the Seventh Amendment right to a jury trial (Count V), *id.* ¶¶ 307-11. Plaintiffs also claim that the Secretary's COVID-19 PREP Act Declaration and subsequent amendments violate the Administrative Procedure Act (Count VI). *Id.* ¶¶ 312-19.

## LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss tests the Court's subject matter jurisdiction. On a facial Rule 12(b)(1) motion, such as this one, the Court "assess[es] if the complaint sufficiently alleges a basis for jurisdiction." *Seiger v. M&M Fin. Invs. Int'l,*

*Inc.*, No. 8:16-cv-2139-T-36AEP, 2017 WL 3971451, at *2 (M.D. Fla. Sept. 8, 2017). "In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true," but "'th[at] tenet . . . is inapplicable to legal conclusions,' which simply 'are not entitled to an assumption of truth.'" *Davis v. Portfolio Recovery Assocs., LLC*, No. 3:20-cv-1063-MMH-JBT, 2021 WL 4133733, at *4 (M.D. Fla. Sept. 10, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680 (2009)). "Further, the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I.    This Court Lacks Subject Matter Jurisdiction

#### A.    The PREP Act Precludes Judicial Review of the Secretary's COVID-19 PREP Act Declaration and Subsequent Amendments (Count VI)

In Count VI, Plaintiffs claim that the Secretary's COVID-19 PREP Act Declaration and subsequent amendments violate the APA, Compl. ¶¶ 312-19, and as relief, seek a declaratory judgment that the Declaration and subsequent amendments are unlawful, *id.*, Prayer for Relief, § D, and an order "[s]et[ting] aside and vacat[ing] the Secretary's Emergency Declaration and subsequent amendments," *id.*, Prayer for Relief, § E.  Pursuant to 5 U.S.C. § 701(a)(1), this Court lacks jurisdiction to consider this claim or award such relief because the PREP Act precludes judicial review of the Secretary's PREP Act declarations.

The APA "applies, . . . except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."  5 U.S.C. § 701(a).  Thus, although "[t]he APA creates a presumption that individuals can bring suit to challenge agency actions that cause legally cognizable injury[,] . . . [i]f Congress expressly foreclosed or postponed judicial review of these agency actions, . . . then that presumption is rebutted."  *Alabama v. EPA*, 871 F.2d 1548, 1559 (11th Cir. 1989).  "Congressional preclusion to judicial review is in effect a jurisdictional bar to suit." *Id.*; *see also Ebron v. ICE*, No. 3:12-cv-272, 2015 WL 5870273, at *1 (M.D. Fla. Oct. 5, 2015) ("[b]y its express terms, the APA does not apply where another statute 'precludes judicial review'" (quoting 5 U.S.C. § 701(a)(1))).  "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."  *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984).

Here, the Court need look no further than the PREP Act's express language, which could hardly be clearer that it precludes judicial review of the Secretary's PREP Act declarations.  Subsection 247d-6d(b), which bears the heading "Declaration by Secretary," authorizes the Secretary to issue declarations under the PREP Act and sets forth the requirements for the Secretary to exercise such authority.  42 U.S.C. § 247d-6d(b).  Within that subsection, the PREP Act provides:  "No court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection."  *Id.* § 247d-6d(b)(7).

11

"[T]his subsection" in that provision refers to § 247d-6d(b). And the Secretary's issuance of a PREP Act declaration is an "action by the Secretary under this subsection." *See id.*; *see also id.* § 247d-6d(b)(1) ("the Secretary may make a declaration" conferring litigation immunity under the PREP Act). The PREP Act therefore clearly and unambiguously precludes judicial review of PREP Act declarations in this Court, or any other federal or state court. *See*, *e.g.*, *Thompson v. Clark*, 741 F.2d 401, 404-05 (D.C. Cir. 1984) (Scalia, J.) (in affirming dismissal of case, reasoning that a statute providing that certain agency actions "shall not be subject to judicial review" "leaves little to the imagination on the issue of judicial review").

Accordingly, the Court should dismiss Count VI for lack of subject matter jurisdiction, and the Court likewise lacks jurisdiction to award Plaintiffs' requested relief of setting aside or vacating the Secretary's COVID-19 PREP Act Declaration and subsequent amendments, or declaring that they are unlawful.

## B. Plaintiffs Lack Standing to Seek Equitable Relief Against Defendants Because Such Relief Would Not Redress Their Alleged Injuries

Beyond their request that the Secretary's COVID-19 PREP Act Declaration and subsequent amendments be set aside, Plaintiffs ask this Court to enjoin Defendants (the federal government and various federal agencies and officials) from implementing the PREP Act, and to issue declaratory relief regarding the purported unlawfulness of the PREP Act. *See* Compl., Prayer for Relief, §§ A-C, E-F. Plaintiffs lack standing to seek such relief because it would not redress their alleged injuries of being unable to bring tort claims against "manufacturers and administrators" of COVID-19 vaccines.

*Id.* ¶ 24. Those manufacturers and administrators are not parties here. They would not be bound by a judgment issued by this Court, and they would still be able to assert immunity under the PREP Act if the Court awarded judgment in Plaintiffs' favor and against the federal Defendants. Accordingly, the relief sought by Plaintiffs would not redress their alleged injuries but instead would leave them worse off: it would not entitle them to bring tort claims against vaccine manufacturers and administrators, but it could prevent them from pursuing administrative remedies against the federal government through the CICP.

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "To satisfy its burden at the pleading stage, a plaintiff must 'clearly allege facts demonstrating each element'" of standing. *Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1336 (11th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "[S]tanding is not dispensed in gross. To the contrary, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (cleaned up).

Equitable relief against the federal Defendants would not redress Plaintiffs' alleged injuries because it would not bind the vaccine "manufacturers and administrators" against whom Plaintiffs wish to bring tort lawsuits. Compl. ¶ 24. As a general matter, judgments do not bind nonparties. *Taylor v. Sturgell*, 553 U.S. 880,

893 (2008).  An injunction may bind only "the parties," their representatives, and "other persons who are in active concert or participation with" them.  Fed. R. Civ. P. 65(d)(2); *see also FTC v. Vylah Tec LLC*, 378 F. Supp. 3d 1134, 1142 (M.D. Fla. 2019) ("Courts of equity have long observed the general rule that a court may not enter an injunction against a person who has not been made a party to the case before it." (quoting *E.A. Renfroe & Co. v. Moran*, 338 Fed. Appx. 836, 838-39 (11th Cir. 2009))). "[N]on-parties to this litigation" also "wouldn't be bound" by a declaratory judgment purporting to "invalidat[e]" the PREP Act.  *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1303 (11th Cir. 2019); *see also Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004) (a declaratory judgment "would not be binding as to" someone who "was not made a party to the declaratory judgment action" and "could not be *res judicata*" against that party in a separate tort action).

Therefore, even if the Court entered injunctive relief and declaratory relief against the federal Defendants, non-party vaccine manufacturers and administrators would not be bound by this Court's judgment.  They would not be subject to any injunction issued by this Court and "wouldn't be 'obliged'—at least in any binding sense—'to honor an incidental legal determination the suit produced.'"  *Lewis*, 944 F.3d at 1302 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 (1992)).  Nor would this Court have authority to issue an order binding on such nonparties that would "[t]oll or extend the statutes of limitations of the Plaintiffs' common-law claims," as Plaintiffs request.  Compl., Prayer for Relief, § G.  In sum, vaccine manufacturers and administrators would continue to be able to assert PREP Act immunity as a defense

in covered tort lawsuits filed by Plaintiffs, as defendants typically do without any involvement of the federal government.[3]  Far from redressing their injuries, the relief sought by Plaintiffs would leave them worse off, because potential tort defendants could still assert immunity, while the federal government would be enjoined from awarding them any compensation through the CICP.

*Lewis* is instructive.  In that case, plaintiffs challenged the constitutionality of a state law that voided Birmingham's minimum wage law, seeking injunctive and declaratory relief.  944 F.3d at 1295.  Plaintiffs sued the state Attorney General but did not name their employers as parties.  The Eleventh Circuit concluded that the plaintiffs lacked standing.  The court found redressability lacking because even if the court issued injunctive relief against the state Attorney General and issued a declaration that the state statute was unconstitutional, the plaintiffs' employers would not be bound and could continue to invoke the state statute as justification to pay plaintiffs less than Birmingham's minimum wage.  *Id.* at 1301-02.  So too, here, equitable relief from this Court would not bind vaccine manufacturers and administrators and would not redress Plaintiffs' injuries that result from these nonparties' potential invocation of the PREP Act.

---

[3] *See*, *e.g.*, *Bird v. State*, 537 P.3d 332, 336-37 (Wyo. 2023) (affirming decision granting summary judgment to defendant on the basis of PREP Act immunity); *M.T. ex rel. M.K. v. Walmart Stores, Inc.*, 528 P.3d 1067, 1070-71 (Kan. App. 2023) (directing dismissal of all claims pursuant to PREP Act immunity).

## II.    Counts I-V Fail To State A Claim

### A.    Plaintiffs Fail To State A Procedural Due Process Claim (Count II)

The PREP Act's grant of liability immunity in the context of countermeasures to combat a public health emergency (or credible risk of future public health emergency), and the CICP's provision of an administrative path to compensation for injuries caused by such countermeasures, do not violate Plaintiffs' right to procedural due process.  Plaintiffs' contrary arguments fail as a matter of law.

The Due Process Clause of the Fifth Amendment provides, "nor shall any person . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.[4]  Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citation omitted).  At the first step, a court "must look to see if the interest is within the [Due Process Clause]'s protection of liberty and property" in order "to determine whether due process requirements apply in the first place."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570-71 (1972).  Plaintiffs' claim fails at both steps.  They fail to allege that they have been deprived of a protected

---

[4] The Fourteenth Amendment similarly provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  Some of the cases discussed in this section involve analysis of the Fourteenth Amendment's Due Process Clause as applied to state action.  "Because the Due Process Clauses use the same language and guarantee individual liberty in the same way, . . . the standards developed in the Fourteenth Amendment context must govern under the Fifth Amendment."  *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 238 (5th Cir. 2022).

property interest, and even if they had, they fail to allege that the CICP's procedures are constitutionally insufficient.

### 1.    Plaintiffs Have Not Been Deprived Of A Protected Property Interest

Plaintiffs' procedural due process claim fails at the threshold because they have not shown a deprivation of a protected property interest.  Plaintiffs claim that multiple property interests are at stake, but in each case, their claim fails as a matter of law.

*First*, Plaintiffs claim that the PREP Act deprives them of a protected property interest to pursue common law tort claims for the alleged bodily harm caused by COVID-19 vaccines.  Compl. ¶ 275(a)-(c).  But the PREP Act granted immunity for claims relating to covered countermeasures long before Plaintiffs were allegedly injured.  As binding precedent holds, litigants have no vested right in the continuation of a long-ago abrogated rule of common law, and so Plaintiffs were not deprived of any property interest protected by the Due Process Clause.

In *Keller v. Dravo Corp.*, 441 F.2d 1239 (5th Cir. 1971),[5] the Fifth Circuit upheld against a due process challenge the Longshoremen's and Harbor Workers' Compensation Act, which "makes management immune from damage suits for its maritime torts against repair yard workers," and substitutes an administrative workers' compensation claim.  *Id.* at 1241.  The court rejected the argument that the workers had a protected property interest in tort claims, explaining that the Supreme Court has

---

[5] Fifth Circuit decisions from before September 30, 1981, constitute binding precedent of the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

held that "[a] person has no property, no vested interest, in any rule of the common law. . . . Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will . . . of the legislature, unless prevented by constitutional limitations." *Id.* at 1242 (quoting *Mondou v. New York, New Haven & Hartford R.R. Co.*, 223 U.S. 1, 50 (1912)).  As the Fifth Circuit explained, "one cannot be heard to question the sufficiency of due process if the rule of law, which merely held the potential to create a property right, was changed before any right vested." *Id.*

The Fifth Circuit later reaffirmed the principle that a statute that prospectively provides immunity from tort claims does not deprive litigants of a protected property interest in *Ducharme*, a case that, like this one, involved a statute that provided immunity from tort claims for vaccine injuries.  *Ducharme* involved the Swine Flu Act, a statute enacted in 1976 that abrogated tort claims arising out of swine flu vaccinations and replaced them with an exclusive cause of action against the federal government, with no right to a jury trial.  *Id.* at 1309.  Rejecting plaintiffs' claim that the act violated the Due Process Clause because it "abrogated plaintiffs' cause of action" against the manufacturer under state law, the Fifth Circuit held that "[i]t is well settled that a plaintiff has no vested right in any tort claim for damages under state law." *Id.*  Because "[p]laintiffs' cause of action against the manufacturer did not arise until after passage of the Swine Flu Act," they "had no prior vested right in a cause of action." *Id.* at 1310.  The same is true here of Plaintiffs' tort claims and the PREP Act.  These decisions are binding and compel rejection of Plaintiffs' due process claim.

Other courts are in accord.  Like *Ducharme*, several courts (including the Eighth Circuit) have rejected due process challenges to the Swine Flu Act.[6]  More recently, the Court of Federal Claims upheld against a due process challenge the National Childhood Vaccine Injury Act ("Vaccine Act"), holding that the Vaccine Act did not deprive litigants of a property interest when it prospectively abrogated tort claims arising out of the administration of certain vaccines and replaced them with an exclusive remedy against the United States.  *See Leuz v. Sec'y of Health & Hum. Servs.*, 63 Fed. Cl. 602 (2005).  Relying on *Ducharme*, the court held that "a plaintiff has no vested right in any tort claim for damages."  *Id.* at 610 (quoting *Ducharme*, 574 F.2d at 1309).  As the court explained: "The Vaccine Act was the law of the land when petitioners' cause of action arose.  As such, the only property rights petitioners had to sue a manufacturer for alleged vaccine-related injuries necessarily flowed through the Vaccine Act.  Because petitioners have not been deprived of any property right, they suffered no procedural due process violation."  *Id.* at 611.  Likewise, the PREP Act was the law of the land when Plaintiffs' claims arose, so its prospective grant of immunity for tort claims did not deprive them of any property right.

---

[6] *See Jones v. Wyeth Labs., Inc.*, 457 F. Supp. 35, 37 (W.D. Ark. 1978) ("No individual has a vested right in any common law cause of action.  Any prospective cause of action Plaintiff may have had against a vaccine manufacturer had not vested at the time the Swine Flu Act was passed on August 13, 1976.  Therefore, consistent with due process, the prospective cause of action could be abolished and the statutory remedy envisioned by the Swine Flu Act substituted."), *aff'd*, 583 F.2d 1070, 1070-71 (8th Cir. 1978) ("We, thus, affirm on the basis of the District Court's opinion."); *Sparks v. Wyeth Labs., Inc.*, 431 F. Supp. 411, 416 (W.D. Okla. 1977) ("There is no question but that the Swine Flu Act comports with the due process clause of the Fifth Amendment.  It is manifest that the statute, insofar as it abolishes a cause of action against a program participant, does so only prospectively."); *Wolfe v. Merrill Nat. Labs., Inc.*, 433 F. Supp. 231, 236 (M.D. Tenn. 1977).

Indeed, courts have recognized that even when Congress passes a law abrogating then-pending causes of action and provides no substitute remedy, there has been no deprivation of a protected property interest.  In 2005, Congress enacted the Protection of Lawful Commerce in Arms Act ("PLCAA"), which immunized federally licensed firearms manufacturers and sellers from most tort claims resulting from the criminal use of firearms, and applied even to pending claims, requiring courts to "immediately dismiss" such claims.  *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1131 (9th Cir. 2009) (quoting 15 U.S.C. § 7902(b)).  Yet the Ninth Circuit held that plaintiffs suing firearms manufacturers had no "vested property right" in even a pending state-law cause of action, because "although a cause of action is a species of property, a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained."  *Id.* at 1141 (quoting *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1086 (9th Cir. 2001)); *see also D.C. v. Beretta U.S.A. Corp.*, 940 A.2d 163, 175-76 (D.C. 2008) (similarly rejecting Due Process Clause challenge to PLCAA).

*Second*, Plaintiffs allege that they have been deprived of "[t]heir interest in being made whole under the CICP."  Compl. ¶ 275(d).  But Plaintiffs do not allege that they have been deprived of the right to pursue CICP claims in accordance with the PREP Act.  Six of the nine individual plaintiffs never submitted a CICP claim.  Of those, five allege that they affirmatively decided not to file a claim, *id.* ¶¶ 185, 203-04, 239, and one alleges that he was unaware of the CICP, but would have chosen not to file a claim even if he had been aware, *id.* ¶ 218.  The remaining three individual Plaintiffs filed CICP claims.  Two of those claims are pending, *id.* ¶¶ 143, 253, and the third was

denied in a written letter, *id.* ¶ 167; *see also* 42 C.F.R. § 110.74(a) (when the program denies a claim, it will "provide the requester . . . with written notice of the basis for the disapproval, and the right to reconsideration of the determination"). Ms. Utter, whose claim was denied, does not allege she exercised her right to seek reconsideration. Compl. ¶ 167. In sum, all Plaintiffs either declined to file CICP claims or have had or are having those claims resolved in accordance with the PREP Act and applicable regulations.

### 2. Plaintiffs Fail To Identify Any Constitutional Infirmity In The CICP's Procedures

Plaintiffs' due process claim fails at the first step, so the Court need not and should not advance to the second step of assessing the adequacy of the CICP's procedures. But if the Court reaches that step, Plaintiffs fail to plead the existence of any constitutional inadequacy in the CICP procedures. Plaintiffs raise various criticisms of the CICP, but many of them are contradicted by the CICP's governing regulations and Plaintiffs' own allegations. In any event, Plaintiffs cannot show that any of these criticisms amount to a due process violation.

When assessing whether administrative procedures are constitutionally adequate, courts generally consider

> three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

i.      *Plaintiffs Fail to Allege a Meaningful Risk of Erroneous Denials of Claims*

On the first factor, as explained above, Plaintiffs have not shown that any protected property interest is at stake.  *See supra*, Part II.A.1.  The crux of Plaintiffs' claim is their contention that, at the second factor, the CICP employs unfair procedures that create a significant risk of erroneous denial of claims or deprivation of compensation.  But their allegations fail to show that such a significant risk exists.

Plaintiffs' various criticisms of the CICP are either unsupported or contradicted by their factual allegations and the governing statutes and regulations.  *First*, Plaintiffs allege that only a small number of CICP claims based on COVID-19 countermeasures have been compensated, Compl. ¶ 108, but they plead no facts to support the inference that claims have been denied erroneously, rather than correctly.  In fact, the CICP website cited by Plaintiffs notes that 102 COVID-19 claims have been found eligible for compensation, and explains the reasons why other claims have been denied, decisions that are all grounded directly in the PREP Act and governing regulations. *See* Countermeasure Injury Compensation Program (CICP) Data, https://www.hrsa.gov/cicp/cicp-data ("*CICP Data*").[7]      According to the CICP website, COVID-19 claims have been denied because requested medical records have not been submitted,[8] the requester failed to show that the covered countermeasure

---

[7] The CICP updates the data on this web page monthly.  As of this filing, the figures are current as of October 1, 2024, and therefore are updated from the figures cited by Plaintiffs when they visited this web page in March 2024.  *See* Compl. ¶ 108 n.26.

[8] *See* 42 C.F.R. § 110.50 (requiring submission of medical records).

directly caused a covered injury,[9] the requester did not file within the one-year filing deadline,[10] or the requester did not identify any covered countermeasure that had been administered.[11]    Plaintiffs fail to allege facts that plausibly show that these determinations were inaccurate or unsound and the result of an unfair and inadequate review process.

        *Second*, Plaintiffs contend that the CICP's process is "opaque."   Compl. ¶ 58. But as they acknowledge, HHS and HRSA have "promulgated regulations establishing and implementing the CICP" and "HRSA provides more information about the CICP on its web page."  *Id.* ¶ 53.[12]   When HHS promulgated the governing regulations, it published notices that together comprised 37 pages in the Federal Register.   *See Countermeasures Injury Compensation Program (CICP): Administrative Implementation, Interim Final Rule*, 75 Fed. Reg. 63,656 (Oct. 15, 2010); *Countermeasures Injury Compensation Program (CICP): Administrative Implementation, Final Rule*, 76 Fed. Reg.

---

[9] *See* 42 U.S.C. § 247d-6e(b)(1) (setting forth direct causation requirement); *see also* 42 C.F.R. § 110.20(a) (same).

[10] *See* 42 U.S.C. § 247d-6e(b)(4) (incorporating procedural provisions from 42 U.S.C. § 239a); *id.* § 239a(d) (imposing one-year filing deadline); 42 C.F.R. § 110.42(a) (same).

[11] *See* 42 U.S.C. § 247d-6e(b)(1) (requiring "administration or use of a covered countermeasure"); *see also* 42 C.F.R. § 110.20(a) (same).

[12] The CICP's website contains pages generally describing the CICP, https://www.hrsa.gov/cicp; describing the meaning of "covered countermeasures," https://www.hrsa.gov/cicp/covered-countermeasures; describing who can file for benefits, https://www.hrsa.gov/cicp/who-can-file-benefits; describing the CICP's process, *CICP Filing Process*; describing the types of available CICP benefits, https://www.hrsa.gov/cicp/types-cicp-benefits; describing the criteria used to determine whether a covered injury occurred, https://www.hrsa.gov/cicp/criteria-demonstrate-covered-injury-occurred; summarizing claims processing data, with ten monthly-updated Excel spreadsheets available for download, *CICP Filing Data*; a frequently asked questions page with 40 questions and answers categorized by subject matter, https://www.hrsa.gov/cicp/faq; a chart comparing the CICP to another compensation program, the Vaccine Injury Compensation Program, https://www.hrsa.gov/cicp/cicp-vicp; and a page collecting links to further resources, including the governing statute and regulations.  https://www.hrsa.gov/cicp/resources.  The website also lists a street address, email address, and toll-free telephone number for the CICP.

62,306 (Oct. 7, 2011). The publication of such extensive information about the CICP's operations hardly indicates a program shrouded in secrecy.

*Third*, Plaintiffs complain that "anonymous staff of the CICP . . . adjudicate an applicant's request." Compl. ¶ 59. But although the CICP has not disclosed the identities of lower-level staff, eligibility determinations are made by the Director of the DICP (currently Dr. Grimes), exercising authority delegated from the Secretary, and the Director issues signed letters explaining the basis of eligibility determinations. *See* 42 C.F.R. §§ 110.3(y), 110.73-110.74. Indeed, when Ms. Utter's claim was denied, the CICP sent her a signed letter from Dr. Grimes denying her claim. *See* Compl. ¶ 167.[13]

*Fourth*, Plaintiffs contend that the right to seek reconsideration of CICP decisions "is illusory" because "the application may seek reconsideration . . . from . . . the same entity that just ruled against the applicant." *Id.* ¶ 62. That is incorrect. While CICP claims are resolved by the Director of the DICP, reconsideration determinations are made by the Associate Administrator of the Health Systems Bureau (currently Suma Nair, Ph.D., M.S.), the parent bureau of DICP. 42 C.F.R. § 110.90(c). The Associate Administrator issues signed decision letters after receiving a recommendation from a "qualified panel" of reviewers "independent of the [CICP]," meaning that they are not drawn from the CICP's staff. *Id.* Notably, the only Plaintiff whose CICP claim was denied, Ms. Utter, does not allege that she sought

---

[13] Defendants have not attached to this filing the decision letter, which contains medical information about Ms. Utter, but would be willing to file it under seal if requested by the Court.

reconsideration. *See* Compl. ¶ 168.  Plaintiffs' contentions regarding the reconsideration process are conclusory and unsupported by any factual allegations.

*Fifth*, Plaintiffs note that the CICP has "experienc[ed] backlogs" and complain that one Plaintiff's claim has been pending for more than two years, *id.* ¶ 143, but in the very testimony Plaintiffs cite, *see id.* ¶¶ 66-81, Dr. Grimes explained the cause of the backlogs and CICP's response.  As Dr. Grimes explained, backlogs developed after the onset of the COVID-19 pandemic because at the time of issuance of the COVID-19 PREP Act declaration in 2020, CICP had only four staff members, and the CICP then received thousands of COVID-19 claims. *See Testimony before the U.S. H.R.: Select. Subcomm. on the Coronavirus Pandemic of the Comm. on Oversight & Accountability* 5-6 (2024), https://oversight.house.gov/wp-content/uploads/2024/02/HRSA_SSCP-Testimony-for-02.15.2024-Hearing.pdf ("Grimes Testimony").  CICP increased its staffing to more than thirty-five full-time staff members and made other process improvements to increase the pace of processing claims and enhance transparency, such as allowing requesters to check the status of claims online and introducing a chat function on its website. *Id.* at 6.  As a result, CICP has greatly increased its pace of resolving claims. *Id.* at 7.

In any event, the fact that certain claims have taken more than two years to resolve does not amount to a due process violation.  Indeed, pharmaceutical civil litigation, which Plaintiffs portray as the gold standard of due process, often takes far more than two years to resolve claims, particularly where (as here) hundreds or thousands of parties claim injury from the same products.  As an example, a

multidistrict litigation involving claims of more than 500 plaintiffs who claim to have suffered atypical femoral fractures caused by the drug Fosamax in the year 2010 or earlier has been pending for well over a decade, and the Third Circuit resolved only last month the preliminary question of whether plaintiffs' claims are preempted by federal law. *See In re Fosamax (Alendronate Sodium) Prod. Liab. Litig.*, --- F.4th ---, 2024 WL 4247311 (3d Cir. Sept. 20, 2024).

*Sixth*, Plaintiffs argue that the CICP violates due process because "injured applicants cannot cross-examine or even confront HRSA's witnesses or challenge its evidence." Compl. ¶ 60; *see also id.* ¶ 277 (alleging "denial of Plaintiffs' right to confront witnesses in civil proceedings"). This argument ignores that the CICP provides a nonadversarial process. Requesters may submit whatever written evidence they would like, including expert analysis. *See* 42 C.F.R. § 110.50. The Director then determines, on the basis of the materials submitted by the requester, whether or not the requester has made out a valid claim for compensation. *See id.* §§ 110.73, 110.74. Unlike adversarial civil litigation, there are no opposing parties or witnesses. As the Supreme Court has held, "informal, nonadversary procedures" can "satisfy due process under the *Mathews* test." *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005).

*Finally*, Plaintiffs characterize the CICP as "underfunded" or "unfunded" and suggest that the CICP will fail to pay out valid claims for lack of funding, Compl. ¶¶ 113, 278, but the CICP has never failed to pay a compensable claim due to lack of funding, and Plaintiffs do not allege otherwise. Any notion that the CICP will run out

26

of funding in the future and that Congress will not provide funding necessary to pay claims is pure speculation and cannot support a present constitutional claim.[14]

In sum, Plaintiffs fail to allege facts that would show that the CICP's procedures give rise to any meaningful risk of erroneous denials of claims, let alone a risk that is so significant as to be constitutionally unacceptable under the *Mathews* test.

   ii.    *The Government Has a Vital Public Health Interest in Maintaining PREP Act Immunity*

The third *Mathews* factor directs courts to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Plaintiffs argue that removing PREP Act immunity "would impose no burden on the government, but rather on private wrongdoers." Compl. ¶ 279. To the contrary, the federal government has a vital public health interest in maintaining PREP Act immunity. Congress enacted the PREP Act "[t]o encourage expeditious development and deployment of medical countermeasures during a public health emergency."[15] That is why when deciding whether to issue a PREP Act declaration,

---

[14] Plaintiffs criticize the CICP for not establishing an injury table for COVID-19 injuries, Compl. ¶ 114, yet the PREP Act states that the agency can establish a table only when it "determines, based on compelling, reliable, valid, medical and scientific evidence that administration or use of the covered countermeasure directly caused such covered injury." 42 U.S.C. § 247d-6e(b)(5)(A). Furthermore, Dr. Grimes testified that the CICP is in "the process of establishing an Injury Table for COVID-19 vaccine injuries." Grimes Testimony at 7. When such a table is established, requesters whose injuries are covered by such a table will have one year from the effective date of the table to submit claims, even if their claims otherwise would have been untimely. *See* 42 C.F.R. § 110.42(f). The PREP Act does not set a deadline for the agency to publish an injury table, and Plaintiffs' dissatisfaction with the agency's progress does not raise a Due Process concern; notably, their Complaint does not bring an Administrative Procedure Act claim alleging that the agency has "unreasonably delayed" the discharge of any statutory duty. 5 U.S.C. § 706(1).

[15] CRS Rpt. at 2.

"the Secretary shall consider the desirability of encouraging the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, and use of such countermeasure."   42 U.S.C. § 247d-6d(b)(6).   PREP Act immunity has become a vital inducement for private companies to invent, manufacture, and distribute life-saving countermeasures.   For example, during the COVID-19 pandemic, the availability of PREP Act immunity was made an essential term of the procurement contracts through which the federal government initially acquired doses of COVID-19 vaccines.[16]   If PREP Act immunity were invalidated, that would imperil the federal government's ability to secure the availability of countermeasures to respond to COVID-19 and other public health emergencies.

### 3.   The PREP Act Is Not Unconstitutionally Vague

Plaintiffs also attempt to shoehorn into their procedural due process claim a "separate[]" and conclusory claim that "the PREP Act is unconstitutionally vague on its face."   Compl. ¶ 282.   This claim fails for multiple reasons.   *First*, the void-for-

---

[16]   *See* Statement of Work for COVID-19 Pandemic—Large Scale Vaccine Manufacturing Demonstration, § 11.1, *available at* https://www.hhs.gov/sites/default/files/pfizer-inc-covid-19-vaccine-contract.pdf ("The Government may not use, or authorize the use of, any products or materials provided under this Agreement, unless such use occurs in the United States and is protected from liability under a declaration issued under the PREP Act, or a successor COVID-19 PREP Act declaration of equal or greater scope."); Statement of Work Large Scale Production of SARS-CoV-2 Vaccine, § H.8, *available at* https://www.hhs.gov/sites/default/files/vaccine-contract-with-moderna-modifications-p00001-p00002-p00003.pdf ("The Government may not use, or authorize the use of, any products or materials provided under this contract, unless such use occurs in the United States (or a U.S. territory where U.S. law applies such as embassies, military and NATO installations) and is protected from liability under a declaration issued under the PREP Act, or a successor COVID-19 PREP Act Declaration of equal or greater scope.").

vagueness doctrine applies to "penal statute[s]," *United States v. Fisher*, 289 F.3d 1329, 1333 (11th Cir. 2002) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)) and "typically applies where a statute *prohibits* conduct without clearly defining that conduct," *Am. Iron & Steel Inst. v. OSHA*, 182 F.3d 1261, 1276–77 (11th Cir. 1999).  But the PREP Act is not penal and does not prohibit any conduct.

*Second*, "[f]or a facial void-for-vagueness challenge to succeed, the challenger must establish that no set of circumstances exists under which the Act would be valid." *SisterSong Women of Color Reprod. Just. Collective v. Governor of Ga.*, 40 F.4th 1320, 1327 (11th Cir. 2022) (quotation omitted).  Plaintiffs do not and cannot show that the PREP Act is vague in all its applications.

*Third*, their claim is simply illogical.  Plaintiffs argue that "[u]ntil and unless the Secretary issues a declaration, the scope of immunity under the PREP Act is undefined and unknowable."  Compl. ¶ 283.  But immunity cannot apply unless and until the Secretary issues such a declaration, which by statute must delineate the scope of immunity, including by identifying the covered countermeasures, the applicable diseases or health conditions, the time period, the covered persons, and the covered geographic area.  *See* 42 U.S.C. § 247d-6d(b).  The Secretary complied with the statute in clearly setting forth the scope of immunity in the COVID-19 PREP Act Declaration and subsequent amendments.  *See*, *e.g.*, 85 Fed. Reg. at 15,201-03.  Indeed, the Declaration unambiguously covers "any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom," and a wide variety of covered persons including

"manufacturers" and those who "administer" the vaccines. *Id.* at 15,201-02. There is no vagueness, let alone the kind of vagueness so "utterly devoid of a standard of conduct" that the enactment "simply has no core and cannot be validly applied to any conduct," as necessary to sustain a facial vagueness challenge. *SisterSong*, 40 F.4th at 1327 (quoting *Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1302 (11th Cir. 2013)).

**B.    Plaintiffs Fail To Plead A Substantive Due Process Claim (Counts III and IV)**

Plaintiffs' substantive due process claims are largely duplicative of one another, and fail for much the same reasons as their procedural due process claim. Substantive due process "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Glucksberg*, 521 U.S. at 720-21 (cleaned up). Plaintiffs do not and cannot show that there exists such a fundamental right to any particular procedure to obtain compensation for injuries, or a fundamental right that a common-law cause of action, once recognized, will never be altered by the legislature. A contrary conclusion would run counter to longstanding precedent holding that "[a] person has no property, no vested interest, in any rule of the common law. . . . Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will . . . of the legislature, unless

prevented by constitutional limitations." *Keller*, 441 F.2d at 1242 (quoting *Mondou*, 223 U.S. at 50).

Plaintiffs also argue that the "PREP Act also abolished constitutional rights encompassing the unqualified rights to live an undiminished physical life, to maintain bodily sanctity, [and] to be free from bodily harm."  Compl. ¶ 291.  But recognizing such nebulously defined unenumerated constitutional rights would contravene the Supreme Court's admonition that courts "must . . . exercise the utmost care whenever we are asked to break new ground in th[e] field" of substantive due process. *Glucksberg*, 521 U.S. at 720 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Nor do Plaintiffs explain how a law that provides immunity for certain tort claims and authorizes administrative compensation claims against the federal government infringes these purported rights, or the right "to life."  Compl. ¶ 291.

As the Ninth Circuit has held, because a law granting immunity does not infringe fundamental rights, to satisfy substantive due process, it need only "withstand rational basis review," which it does "as long as the legislature was pursuing a rational policy."  *Ileto*, 565 F.3d at 1140 (quoting *Lyon*, 252 F.3d at 1086).  Here, it was entirely rational for Congress to provide liability immunity concerning countermeasures to incentivize development and deployment of countermeasures to combat public health emergencies, and provide those injured by countermeasures with an alternative remedy against the federal government, as Congress has repeatedly done before.  *See*, *e.g.*, *Leuz*, 63 Fed. Cl. 602 (upholding act establishing Vaccine Injury Compensation Program against constitutional challenges, including substantive due process);

*Ducharme*, 574 F.2d 1307 (upholding constitutionality of Swine Flu Act); Smallpox Emergency Personal Protection Act, Pub. L. No. 108-20, 117 Stat. 638 (2003) (codified at 42 U.S.C. §§ 239-239h) (establishing liability immunity and administrative compensation scheme for smallpox vaccines).

### C.     The PREP Act Does Not Violate the Separation of Powers (Count I)

Plaintiffs claim that the PREP Act violates the separation of powers because it assigns resolution of CICP claims to an administrative tribunal rather than an Article III court.  Compl. ¶¶ 254-73.  This claim fails for two independently sufficient reasons.

To start, the federal government has sovereign immunity from monetary (or other) claims, and the federal government has the right to attach terms and conditions to waivers of sovereign immunity, including that such claims proceed in an administrative tribunal rather than a court.  "Sovereign immunity generally protects the United States and its agencies against suit.  This 'familiar doctrine' has ancient roots that can be traced back to England in the Middle Ages."  *Smith*, 14 F.4th at 1230-31 (quoting *The Siren*, 74 U.S. (7 Wall.) 152, 153-54 (1868)).  Sovereign immunity "was also recognized early on as a feature of American law: 'The universally received opinion is, that no suit can be commenced or prosecuted against the United States.'"  *Id.* (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411-12 (1821) (Marshall, C.J.)).  Therefore, "[i]t is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

Although "[t]he federal government can waive its sovereign immunity," such a waiver "'must be strictly construed in favor of the United States' and 'not enlarged beyond what the language of the statute requires.'" *Smith*, 14 F.4th at 1231 (quoting *United States v. Idaho ex rel. Dir., Idaho Dep't of Water Res.*, 508 U.S. 1, 7 (1993)). Crucially, "courts are required to 'strictly observe' all terms and conditions that accompany a waiver of sovereign immunity." *Id.* (quoting *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015)).

As a corollary, the federal government can condition a remedy against the federal government on proceeding outside an Article III court. As the Supreme Court declared more than a century ago: "These general rules are well settled: (1) That the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts. (2) That where a statute creates a right and provides a special remedy, that remedy is exclusive." *Babcock*, 250 U.S. at 331; *see also Lynch v. United States*, 292 U.S. 571, 582 (1934) ("When the United States creates rights in individuals against itself, it is under no obligation to provide a remedy through the courts. It may limit the Individual to administrative remedies." (cleaned up)); *accord McDonnell v. Comm'r of Soc. Sec.*, No. 5:21-CV-315-GKS-PRL, 2021 WL 4267861, at *2 (M.D. Fla. Aug. 12, 2021), *report & recommendation adopted*, No. 5:21-CV-315-GKS-PRL, 2021 WL 4263473 (M.D. Fla. Sept. 20, 2021). For example, when Congress expanded veterans' benefits after World War I, it assigned administration of such benefits to an administrative agency and precluded judicial review; the Fifth Circuit and Eleventh Circuit repeatedly upheld this regime as constitutional. *See Morgan v.*

*United States*, 115 F.2d 426, 427 (5th Cir. 1940); *Barefield v. Byrd*, 320 F.2d 455, 456-57 (5th Cir. 1963); *Hiljer v. Walters*, 749 F.2d 1553, 1553 (11th Cir. 1985).[17]

In the PREP Act, Congress waived the federal government's sovereign immunity by providing that eligible individuals can seek "compensation" from the federal government "for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to [a PREP Act] declaration." 42 U.S.C. § 247d-6e(a). Yet Congress set conditions on that waiver, specifically that compensation claims would be resolved by an administrative tribunal, without judicial review. *See id.* § 247d-6e(b)(4) (procedures for resolving claims "shall be those stated in [42 U.S.C. § 239a]" and HHS regulations); *id.* § 239a(f)(2) (precluding judicial review of claims determinations). Under the above precedents, these provisions do not violate Article III, but rather, are valid conditions on Congress's waiver of sovereign immunity.

Because the PREP Act validly sets conditions on the federal government's waiver of sovereign immunity, the Court need go no further to dispose of Plaintiffs' separation of powers claim. But there is a second, and independent, reason to reject that claim—namely, that the resolution of compensation claims by the CICP is consistent with the public rights doctrine. As the Supreme Court has recognized, there

---

[17] In 1988, Congress changed the veterans' benefits system to authorize judicial review of veterans' benefits decisions by an Article III court. *See* Veterans' Judicial Review Act, Pub. L. 100-687, 102 Stat. 4105 (1988). Specifically, veterans' benefits decisions are appealable to an administrative tribunal, the Board of Veterans' Appeals, whose decisions are appealable to an Article I court, the Court of Appeals for Veterans Claims, whose decisions are appealable to the Federal Circuit. *See* 38 U.S.C. §§ 7252, 7292.

exists a "class of 'public rights' whose adjudication Congress may assign to administrative agencies," and where the public rights doctrine applies, Congress has "power to commit adjudication of a statutory cause of action to a non-Article III tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53-54 (1989). As the Supreme Court recently noted, "the granting of public benefits such as payments to veterans" are within the "historic categories of adjudications [that] fall within the" public rights doctrine. *SEC v. Jarkesy*, 144 S. Ct. 2117, 2133 (2024). The PREP Act provides a public benefit: the right to seek compensation from the federal government for serious injuries directly caused by covered countermeasures in a public health emergency. 42 U.S.C. § 247d-6e. Therefore, under the historically recognized public rights doctrine, such compensation claims can be assigned to an agency rather than an Article III court.

### D.    The PREP Act Does Not Violate the Seventh Amendment (Count V)

Plaintiffs claim that the PREP Act violates the Seventh Amendment's right to trial by jury because it grants immunity for tort claims that, if brought in federal court, would be subject to trial by jury. Compl. ¶¶ 308-10. Not so. As explained above, the PREP Act validly granted vaccine manufacturers and administrators immunity from Plaintiffs' potential tort claims. *See supra*, pp. 17-20. "[A]s a matter of logic, it is axiomatic that if a cause of action can be abolished, the jury trial of that action is also abolished." *Sparks*, 431 F. Supp. at 418. "[T]he Government can legislate the rights of action out of existence and substitute an exclusive remedy against" the federal government, "notwithstanding that it precludes a jury trial." *Adams v. Jackel*, 220 F.

Supp. 764, 766 (E.D.N.Y. 1963).  Indeed, the Fifth Circuit has specifically rejected a Seventh Amendment claim where Congress eliminated tort claims and replaced them with a remedy against the United States with no jury trial.  *See Ducharme*, 574 F.2d at 1311.

If Plaintiffs brought a tort claim in federal court (relying on diversity jurisdiction) against a vaccine manufacturer or administrator covered by the PREP Act, they would still be able to demand that any trial take place before a jury.  Fed. R. Civ. P. 38.  A trial would almost certainly never occur because the court, based on PREP Act immunity, would likely reject the claim before trial through a motion to dismiss or a motion for summary judgment.  Yet it is well established that the procedural mechanisms for a federal court to weed out legally invalid claims before trial do not violate the Seventh Amendment.  *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919 (11th Cir. 2018) (holding that "summary judgment does not violate the Seventh Amendment" and dismissing the contrary argument as "[n]onsense" (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979))); *Henry v. Jones*, 484 F. App'x 290, 291 (11th Cir. 2012) ("Because dismissal under Rule 12(b)(6) was proper, Henry's Seventh Amendment right to a trial by jury was not violated.").  Accordingly, the PREP Act's immunity provisions raise no Seventh Amendment concerns.

To the extent that Plaintiffs contend that the PREP Act violates the Seventh Amendment because they do not receive a jury trial on their CICP claims against the federal government, that argument fails for largely the same reasons that their separation of powers claim fails.  "[T]he United States, as sovereign, is immune from

suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman*, 453 U.S. at 160 (cleaned up). Therefore, "if Congress waives the Government's immunity from suit, . . . the plaintiff has a right to a trial by jury only where that right is one of 'the terms of the Government's consent to be sued.'" *Id.* (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). As the Fifth Circuit has flatly declared, "[w]hen the sovereign waives immunity it may attach any conditions (including no right to trial by jury) to its consent." *Ducharme*, 574 F.2d at 1311. That is precisely what Congress did in the PREP Act by assigning compensation claims to an administrative tribunal.[18]

In addition, because the public rights doctrine applies, *see supra*, pp. 34-35, assigning such claims to an administrative tribunal without a jury does not violate the Seventh Amendment. *See Granfinanciera*, 492 U.S. at 51 (for claims subject to the public rights doctrine, Congress "may assign their adjudication to an administrative agency with which a jury trial would be incompatible, without violating the Seventh Amendment[]").

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint for lack of subject-matter jurisdiction and failure to state a claim.

---

[18] *Jarkesy* is not to the contrary. In *Jarkesy*, the Supreme Court held that a securities professional had the right to a jury trial when the Securities and Exchange Commission brought a proceeding against him for civil penalties based on violations of federal securities laws. 144 S. Ct. at 2127. *Jarkesy* thus did not address sovereign immunity or question the longstanding precedent holding that a waiver of the federal government's sovereign immunity need not include the right to a jury trial.

Dated:  October 18, 2024                Respectfully Submitted,


                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney
                                        General

                                        ERIC B. BECKENHAUER
                                        Assistant Director, Federal Programs
                                        Branch

                                        */s/ Jeremy S.B. Newman*
                                        JEREMY S.B. NEWMAN (Mass. Bar
                                        No. 688968)
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Federal Programs
                                        Branch
                                        1100 L Street, N.W.
                                        Washington, DC 20005
                                        Tel: (202) 532-3114
                                        Fax: (202) 616-8470
                                        Email: jeremy.s.newman@usdoj.gov

                                        *Attorneys for Defendants*

## Local Rule 3.01(g) Certification

I hereby certify that I conferred regarding this Motion with Plaintiffs' counsel by videoconference on October 18, 2024.  Plaintiffs oppose the relief requested in this Motion.

                                        */s/ Jeremy S.B. Newman*

                                        Jeremy S.B. Newman
                                        *Attorney for Defendants*