IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MOMS FOR AMERICA,                          Case No. 3:24-cv-00650-MMH-MCR
JEFF JACKSON, MICHELLE UTTER,
HENRIETTA SIMOES, ADELIO
SIMOES, ELIZABETH BROWN, CODY
HOWARD, ALLEN MARTIN, TAYLOR
MARTIN, AND LA NEDIA ROOKER,

     Plaintiffs,

vs.

U.S. DEPARTMENT OF HEALTH
AND HUMAN SERVICES,    U.S.
HEALTH RESOURCES AND SERVICES
ADMINISTRATION, HHS
SECRETARY XAVIER BECERRA, in his
official capacity, the UNITED STATES
OF AMERICA, and PRESIDENT OF THE
UNITED STATES JOSEPH R. BIDEN,
in his official capacity.

     Defendants.

---

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS**

---

Seldon J. Childers                    Erik Luckau
Charles H. Hardage                    *Attorney for Moms for America*
Nicholas P. Whitney
*Attorneys for Plaintiffs*

## INTRODUCTION

On May 3, 2024, The New York Times ran a feature story headlined, "***Thousands Believe Covid Vaccines Harmed Them. Is Anyone Listening?***"[1] The article described the hair-raising stories of dozens of healthcare professionals and public health scientists injured by the COVID-19 vaccines who did not qualify for compensation and cannot obtain effective medical treatment.

As one example of many, the article described Dr. Gregory Poland, the Editor-in-Chief of the Journal Vaccine. Dr. Poland believes his intolerable tinnitus was caused by the COVID-19 shots. But he cannot qualify for PREP compensation due to the absence of any published studies definitively linking his severe tinnitus to the COVID-19 shots.

Due to the novelty of the culpable countermeasure, Dr. Poland's PREP Act claim is barred due to a lack of "compelling, reliable, valid, medical, and scientific evidence." The New York Times article also described the very same failures of the CICP scheme described in the Plaintiffs' Complaint, but which remain stubbornly invisible to the Government:

> [C]laims regarding Covid vaccines go to the Countermeasures Injury Compensation Program. Intended for public health emergencies, this

---

[1] Apoorva Mandavilli, *Thousands Believe Covid Vaccines Harmed Them. Is Anyone Listening?*, The New York Times (May 3, 2024), https://www.nytimes.com/2024/05/03/health/covid-vaccines-side-effects.html.

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.                    CHILDERS LAW, LLC                    Page 1 of 46
Case No. 3:24-cv-00650

program has narrow criteria to pay out and sets a limit of $50,000, with stringent standards of proof.

It requires applicants to prove within a year of the injury that it was "the direct result" of getting the Covid vaccine, based on "compelling, reliable, valid, medical, and scientific evidence."

The program had only four staff members at the beginning of the pandemic, and now has 35 people evaluating claims. Still, it has reviewed only a fraction of the 13,000 claims filed, and has paid out only a dozen.

Dr. Ilka Warshawsky, a 58-year-old pathologist, said she lost all hearing in her right ear after a Covid booster shot. But hearing loss is not a recognized side effect of Covid vaccination.

The compensation program for Covid vaccines sets a high bar for proof, she said, yet offers little information on how to meet it: "These adverse events can be debilitating and life-altering, and so it's very upsetting that they're not acknowledged or addressed."

Dr. Zimmerman, the neuroscientist, submitted her [CICP] application in October 2021 and provided dozens of supporting medical documents. She received a claim number only in January 2023.

In adjudicating her claim for workers' compensation, Washington State officials accepted that Covid vaccination caused her injury, but she has yet to get a decision from the federal program.

*Id.*

Captain John Yossarian, protagonist of Joseph Heller's famous novel *Catch-22*, would instantly recognize the tortured logic supporting the Government's Motion to Dismiss the Plaintiffs' Complaint, which misses the point, makes circular arguments, invokes logical fallacies, and misapplies basic law.

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.



Page 2 of 46
Case No. 3:24-cv-00650

# ARGUMENT

## I.    THIS COURT HAS SUBJECT MATTER JURISDICTION

Defendants' Motion to Dismiss Complaint (Defendants will hereafter be referred to as the "Government" and their Motion to Dismiss Complaint will be referred to as the "Motion" or the "Motion to Dismiss") argues that this Court lacks subject matter jurisdiction as to all counts in this case because Plaintiffs lack standing to bring this lawsuit.  [Dkt. 29, pgs. 10-15].  It further argues this Court lacks subject matter jurisdiction as to Plaintiffs' Count VI, which alleges a violation of the Administrative Procedures Act.  [*Id.*]  The Government's argument is wrong on both points and this Court has subject matter jurisdiction to hear all counts in this case.

### A.  Plaintiffs Have Standing to Bring this Lawsuit

The Government claims Plaintiffs lack constitutional standing because a favorable decision would not provide <u>any</u> remedy. The Government is wrong. Here is the Government's straw-man argument:

> [Plaintiffs] seek injunctive or declaratory relief against the federal government. But Plaintiffs lack standing to seek such relief because it would not redress their alleged injury of being unable to sue non-party manufacturers and administrators of COVID- 19 vaccines. Such non-parties would not be bound by a judgment from this Court and could continue to assert PREP Act immunity even if this Court granted judgment against the federal government.

[Dkt. 29, p. 2].

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.        Page 3 of 46
Case No. 3:24-cv-00650

Courts have the important duty to evaluate whether a real case and controversy exists by testing the standing of the plaintiff filing the suit. "[A] litigant must show that [1] it has suffered a concrete and particularized injury that is either actual or imminent, that [2] the injury is fairly traceable to the defendant, and [3] that a favorable decision will likely redress that injury." *Massachusetts v. EPA*, 549 US 497 (2007).

The Government has conceded (or decided not to object) to the first two elements, injury and causation.[2]  However, if the Government caused any of the Plaintiffs' injuries, stopping the Government's behavior will relieve Plaintiffs' injuries. At this stage, the Plaintiffs' burden of establishing redressability is, according to the Ninth Circuit (citing the Supreme Court), <u>relatively modest</u>, and need not <u>guarantee</u> that a favorable decision would redress their injuries:

> A plaintiff's burden to demonstrate redressability is "<u>relatively modest</u>." *Bennett v. Spear*, 520 U.S. 154, 171, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). A plaintiff <u>need not demonstrate that there is a guarantee</u> that her injuries will be redressed by a favorable decision; rather, a plaintiff need only show a substantial likelihood that the relief sought would redress the injury."

*Tucson v. City of Seattle*, 91 F.4th 1318, 1325 (9th Cir. 2024) (emphasis supplied).

The Supreme Court's description of redressability is even less strict, explaining relief need only be "likely." "[R]elief from the injury must be 'likely' to

---

[2] Except to say there is a reason why the Government implicitly conceded these elements, which is that the Plaintiffs' standing relative to injury and causation cannot in good faith be denied.

follow from a favorable decision." *Allen v. Wright*, 468 US 737, 751 (1984). Even at that, "[t]hese terms cannot be defined so as to make application of the constitutional standing requirement a mechanical exercise." *Id.*

Expanding on the standard for showing redressability in terms of the possibility of relief, the Supreme Court reversed the inquiry, asking generally whether "the prospect of obtaining relief from the injury as a result of a favorable ruling [is] too speculative?" *Id.* at 752.

Plaintiffs need not show that a favorable decision will exhaust every conceivable form of relief.  "[A] plaintiff satisfies the redressability requirement when he shows that <u>a</u> favorable decision will relieve <u>a</u> discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *Larson v. Valente*, 456 US 228, 270 n.6 (1982) (Rehnquist, W., dissenting) (emphasis supplied, italics in original).

Tellingly, the Government never suggested, if not Plaintiffs, *which* conceivable litigant holds standing to challenge the PREP Act.

Plaintiffs' Complaint asks the Court to "[s]et aside and vacate the Secretary's Emergency Declaration and subsequent amendments." [Dkt. 1, p. 101]. Vacating the Secretary's Declaration (and amendments) would remove from the scope of PREP Act immunity the parties Plaintiffs seek to sue for common law claims. *See Baughcum v. Jackson*, 92 F.4th 1024, 1032 (11th Cir. 2024) (finding redressability

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.

CHILDERS LAW, LLC

Page 5 of 46
Case No. 3:24-cv-00650

where court could order probate judges to ignore unconstitutional age limits in state law and issue firearm licenses to plaintiffs and similarly situated members).

The Government also complains that Plaintiffs have not joined immunized parties whose rights might be affected by any decision on the constitutionality or enforceability of the PREP Act. But the Government may not broadly define the class of immunized persons to include nearly every company and healthcare provider working in the pandemic and then complain that all those parties were not joined. It is neither practical nor necessary to join such third parties.

### B.  The PREP Act Does not Bar Judicial Review

The Government argues Count VI should be dismissed because the PREP Act precludes judicial review of the Secretary's determinations, stripping the Court of subject matter jurisdiction:

> Pursuant to 5 U.S.C. § 701(a)(1), this Court lacks jurisdiction to consider this claim or award such relief because the PREP Act precludes judicial review of the Secretary's PREP Act declarations.

[Dkt. 29, p. 10].

The Government's interpretation is too broad and misreads the statutory language. Although the PREP Act bars judicial review of "any action by the Secretary," the scope of this language is ambiguous. 42 U.S.C. § 247d-6d.  Courts must interpret bars to judicial review narrowly, particularly where ambiguity

*Response to Motion to Dismiss*
*Moms for America v. HHS, et al.*                                   Page 6 of 46
                                                                    Case No. 3:24-cv-00650

exists, as complete preclusion raises significant constitutional concerns that courts should generally attempt to avoid wherever possible.

Nothing in the PREP Act defines what constitutes an "action by the Secretary" or how it differs from a "determination," the PREP Act's preferred term for the specific activities it authorizes the Secretary to perform. A broad interpretation of "any action" would sweep in all types of agency activities, effectively insulating even potentially unlawful exercises of authority from judicial review. This would raise serious constitutional concerns by barring courts from checking agency overreach, especially on core determinations under the PREP Act, such as declarations of emergency, immunity designations, and the identification of covered countermeasures.

The Supreme Court has consistently recognized a *strong presumption* that Congress intends judicial review of administrative action. Judicial review ensures that agencies remain within the bounds of their statutory authority, safeguarding against executive overreach. *See, Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986). "[O]nly upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Labs. v. Gardner*, 387 U.S. 136, 140–41 (1967) (cleaned up, *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977)). "A survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.



Page 7 of 46
Case No. 3:24-cv-00650

persuasive reason to believe that such was the purpose of Congress." *Id.* at 140 (cleaned up). As Chief Justice Marshall observed, "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws." *Marbury v. Madison*, 5 U.S. 137, 163 (1803).

Therefore, the most reasonable interpretation of the PREP Act's judicial review limitation is that "any action" refers only to the Secretary's specific claims determinations for awards or denials under the Countermeasures Injury Compensation Program (CICP). This interpretation aligns with several Supreme Court decisions that narrowly interpret judicial review limitations in administrative contexts to preserve statutory and procedural compliance oversight.

For example, in *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667 (1986), the Court interpreted a limitation on judicial review to apply only to individual Medicaid claims awards, not to broader statutory or procedural challenges regarding how awards were made.

Similarly, in *Johnson v. Robison*, 415 U.S. 361 (1974), a case dealing with veteran's benefits claims, the Court held that the statutory bar to judicial review applied only to individual benefits decisions, not broader constitutional or procedural challenges. The Court reasoned that the judicial review bar was

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.

CHILDERS LAW, LLC

Page 8 of 46
Case No. 3:24-cv-00650

intended to prevent routine benefits claims from burdening the courts, not to foreclose all meaningful review of statutory compliance. *Id.* at 370.

It would be incongruous if the Secretary were completely shielded from any judicial review, rather than shielding claims decisions as in *Bowen* and *Johnson*.

The PREP Act's purpose is to balance rapid response with accountability. A recent federal district court, considering the scope of immunity provided in the PREP Act, reasoned that extending immunity to breach of contract claims would <u>undermine</u> rather than support the PREP Act's purpose by undermining confidence in covered entities. *Dressen v. AstraZeneca,* No. 2:24-cv-00337-RJS-CMR, 2024 WL 4666577, at *10-11 (D. Utah 2024).

Finally, interpreting the words "any action of the Secretary" in the broadest, most literal sense—without considering the context of the rest of the PREP Act or its intended purpose—would yield an absurd result. Under this extreme interpretation, the language would not preclude judicial review of the Secretary's *inaction,* such as a failure to timely review individual claims. This could result in "overloading the courts with trivial matters, a consequence which would unduly tax the federal court system"—precisely the outcome that the judicial review exclusion was intended to prevent. *Bowen*, 476 U.S. at 675; *Dressen*, 2024 WL 4666577, at *11 ("The 'absurdity doctrine' is a rule of statutory construction counseling that 'interpretations of a statute which would produce absurd results

are to be avoided if alternative interpretations consistent with the legislative purpose are available.'").

Therefore, considering the lack of a precise definition of 'action by the Secretary,' the principles of constitutional avoidance, and the strong presumption in favor of judicial review, this Court should narrowly construe the PREP Act's judicial review bar. Such an interpretation preserves the Court's oversight role, limiting the bar to individual compensation determinations while allowing broader declarations by the Secretary to be subject to APA review.

Because Plaintiffs have standing and the PREP Act does not preclude judicial review of Plaintiffs Count VI claim for violation of the Administrative Procedure Act, this Court has subject matter jurisdiction to consider all claims brought by Plaintiffs in this lawsuit.

## II.    PLAINTIFFS HAVE STATED CAUSES OF ACTION FOR COUNTS I AND V

### A.    Plaintiffs Have Stated Causes of Action for Violation of the Separation of Powers and for Violation of the Seventh Amendment (Counts I and V)

Contrary to the Government's position [Dkt. 29, pgs. 32-37], Plaintiffs have adequately pled a cause of action for violations of the separation of powers and Seventh Amendment.

1.    <u>The Government May Not Legislate Common Law Claims To Exclude the Judicial Branch</u>

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.



Page 10 of 46
Case No. 3:24-cv-00650

Plaintiffs have properly alleged several <u>private</u> rights that the PREP Act purports to withdraw from judicial cognizance, including the right to claim battery, negligence, fraud, and products liability. [Dkt. 1, ¶¶24, 121, 290, 297] The PREP Act purports to completely bar those claims from ever being brought in the first place, and purports to pre-empt all contrary state law. 42 U.S.C. § 247d-6d ("a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss").

The Government argued in its Motion that it can legislate Plaintiffs' common-law claims out of existence, launching the Plaintiffs' Article III and Seventh Amendment right to a jury trial into legislative oblivion:

> As a matter of logic, it is axiomatic that if a cause of action can be abolished, the jury trial of that action is also abolished. The Government can legislate the rights of action out of existence and substitute an exclusive remedy against the federal government, notwithstanding that it precludes a jury trial.

[Dkt. 29, p. 35] (*citing Adams v. Jackel*, 220 F. Supp. 764, 766 (E.D.N.Y. 1963),[3] cleaned up).

---

[3] The full citation shows the *Jackel* case dealt with the government's ability to legislate out of existence claims against itself: "And the same is true of rights of action against government contractors for infringing patents by their infringing manufacture for government account: the Government can legislate the rights of action out of existence and substitute an exclusive remedy against itself in the Court of Claims." *Jackel*, 220 F. Supp. at 766.

The Government's reliance on *Jackel* is a misapplication. The PREP Act does not simply legislate away claims against the government or government contractors acting for federal purposes, as in *Jackel*. Instead, it removes the ability of private citizens to pursue private rights against other private parties in state and federal courts. This is a significant departure from the principles in

The Government is wrong, and the PREP Act's language violates the Constitution. The Constitution <u>explicitly</u> protects common law civil claims and reserves their adjudication to <u>Article III courts</u> <u>with a jury</u>. U.S. Const. amend. VII,.

This right is inviolable. "When a matter from its nature is the subject of a suit at the common law, Congress <u>may not</u> withdraw it from judicial cognizance." *Sec. & Exch. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2139 (2024) (emphasis supplied, cleaned up).

"Under the basic concept of separation of powers … the judicial Power of the United States cannot be shared with the other branches." *Id.* at 2131 n.16. Indeed, "there is no liberty if the power of judging be not separated from the legislative and executive powers." *Id.* at 2131 (*citing* The Federalist No. 78). In sum, "matters concerning private rights may not be removed from Article III courts." *Id.* at 2132.

Nevertheless, the Government argues that extinguishment of Plaintiffs' private, common-law causes of action falls within an exception, the "public rights doctrine," by operation of the statutory remedy provided under the PREP Act's Countermeasures Injury Compensation Program (CICP).[4] [Dkt. 29, pgs. 34-35].

---

*Jackel* and more directly impacts individuals' Seventh Amendment rights to a jury trial in common-law claims.

[4] The public rights exception "has no textual basis in the Constitution," and courts must give "close attention to the basis for each asserted application" so that the exception does not "swallow the rule." *Jarkesy*, 144 S. Ct. at 2134.

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.                    CHILDERS LAW, LLC                    Page 12 of 46
                                                                    Case No. 3:24-cv-00650

However, the Government misapplies the public rights doctrine, which permits Congress to assign certain disputes involving statutory entitlements or government benefits to non-Article III tribunals. The doctrine applies only where the rights are "public rights" between the government and individuals based on a statutory entitlement, such as Social Security or other government-created benefits.[5] Here, by contrast, Plaintiffs' claims are rooted in common law causes of action, which involve *private rights* historically adjudicated in Article III courts.

The CICP, combined with the PREP Act's immunity provisions, effectively extinguishes Plaintiffs' common-law claims by barring any judicial action against manufacturers, distributors, and administrators of covered countermeasures within the scope of immunity. Since the PREP Act preempts lawsuits for claims related to countermeasures, Plaintiffs have no alternative recourse but the CICP. This structure makes the CICP an *exclusive remedy* for their injuries, rather than merely an alternative path.

The Government's argument is a strawman. Plaintiffs' Count I and Count V claims do not complain about the CICP scheme. Instead, Count I and Count V

---

[5] The Supreme Court has consistently held that the public rights doctrine does not extend to traditional private rights claims, such as common-law tort claims. *See, e.g., Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 54-55 (1989) (Scalia, A. concurring in part) (recognizing that "legal claims … are not at all implicated by the public rights doctrine" and therefore "must be adjudicated by an Article III court").

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.                    CHILDERS LAW, LLC                    Page 13 of 46
Case No. 3:24-cv-00650

address the withdrawal from judicial cognizance of their common law claims, which are private rights, not public rights.[6]

The Government calls its scheme "nonadjudicatory". [Dkt. 29, p. 26]. In practice, it is intended as a substitute for <u>common law claims</u> and (in theory) awards compensation for injuries caused by covered countermeasures. The Supreme Court has forbidden such rhetorical sleight of hand:

> Even when an action originates in a newly fashioned regulatory scheme, what matters is the substance of the action, not where Congress has assigned it…<u>Congress cannot conjure away the Seventh Amendment by mandating that traditional legal claims be taken to an administrative tribunal</u>.

*Jarkesy,* 144 S. Ct. at 2135-36 nn. 19-21 (cleaned up, emphasis supplied).

Finally, the Government invokes a talismanic and ill-defined "vital public health interest" as a rationale to avoid the Constitution. [Dkt. 29, p. 27]. Even if that ambiguous reasoning were persuasive, it is insufficient to strip Plaintiffs of the protections of the court systems and the Seventh Amendment.

> [E]ffects like increasing efficiency and reducing public costs are not enough to trigger the exception. Otherwise, evading the Seventh Amendment would become nothing more than a game, where the Government need only identify some slight advantage to the public from agency adjudication to strip its target of the protections of the Seventh Amendment.

*Jarkesy,* 144 S. Ct. at 2135-36 n.23 (cleaned up).

---

[6] "If such an exercise of judicial power may nonetheless be taken from the Article III Judiciary simply by deeming it part of some amorphous 'public right,' then Article III would be transformed from the guardian of individual liberty and separation of powers we have long recognized into mere wishful thinking." *Stern v. Marshall*, 564 U.S. 462, 495 (2011).

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.                    CHILDERS LAW, LLC                    Page 14 of 46
Case No. 3:24-cv-00650

The PREP Act's scheme is, in substance, a reallocation of private rights to an administrative process. The CICP is meant to be the sole avenue for recovery for PREP Act-covered injuries. Thus, it must meet constitutional standards for adjudicating private rights, including Article III oversight and the Seventh Amendment jury trial right. But the PREP Act does not pass constitutional muster.[7]

2. <u>The PREP Act Scheme Violates the Seventh Amendment Right to a Jury Trial</u>

"Congress cannot circumvent the Seventh Amendment jury-trial right simply by passing a statute that assigns traditional legal claims to an administrative tribunal." *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 453 (5th Cir. 2022) (cleaned up). Yet this is exactly what the Government's PREP Act scheme purports to accomplish – relegating Plaintiffs' claims for battery, negligence,

---

[7] One argument the Government weaves through its Motion is that the PREP Act implicitly waived sovereign immunity, thereby granting to Congress the authority to usurp Article III authorities and limit Seventh Amendment rights. *See e.g.* [Dkt. 29, p. 3]. As an initial matter, this argument is wrong on its face because Congress cannot—through waiver of the shield of sovereign immunity—grant itself a spear for impinging on the rights of the people or the prerogatives of other branches. But even putting this point aside, the Government has not waived sovereign immunity here. Waivers of sovereign immunity cannot be implied and must be unequivocally expressed. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992); *King v. United States Gov't*, 878 F.3d 1265, 1267 (11th Cir. 2018). Not only does the Motion identify no explicit waiver of sovereign immunity included in the text of the PREP Act (there is none), but the explicit text of the PREP Act specifically provides that sovereign immunity is <u>not</u> waived. It states "[n]othing in this section shall be construed to … waive sovereign immunity or to abrogate or limit any defense or protection available to the United States or its agencies[.]" 42 U.S.C. § 247d-6d(f).

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.

CHILDERS LAW, LLC

Page 15 of 46
Case No. 3:24-cv-00650

fraud, and products liability to the CICP. *Jarkesy* reaffirmed that the government cannot sidestep a citizen's Seventh Amendment rights by delegating adjudication of such claims to an administrative body.

The CICP lacks any provision for a jury trial and does not afford Plaintiffs the procedural safeguards inherent in judicial proceedings. Allowing the Secretary to extinguish Plaintiffs' common-law claims under the PREP Act by offering the unlikely potential for CICP compensation thus violates the Seventh Amendment, depriving Plaintiffs of their right to have these private rights claims adjudicated by a jury of their peers.

In sum, *Jarkesy* firmly establishes that Congress cannot avoid the constitutional requirement of an Article III court and a jury trial for private rights claims by reclassifying them as public rights or assigning them to an administrative tribunal. Plaintiffs' common-law claims are precisely the type of private rights that the Constitution protects from just such reassignment, as they historically fall within the jurisdiction of Article III courts and entitle Plaintiffs to a jury trial under the Seventh Amendment. Therefore, the Government's interpretation of the PREP Act, which seeks to extinguish these private rights by placing them solely within the CICP's purview, violates both the Seventh Amendment and the separation of powers doctrine, as reaffirmed by *Jarkesy*.

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.                    CHILDERS LAW, LLC                    Page 16 of 46
                                                                                    Case No. 3:24-cv-00650

The Government's arguments to dismiss Plaintiffs' Separation of Powers (Count I) and Seventh Amendment Jury Trial (Count V) claims are not based on law, and should be denied.

## B. Plaintiffs have Stated Causes of Action for Substantive Due Process (Counts III and IV)

Contrary to the Government's position [Dkt. 29, pgs. 30-32], Plaintiffs have adequately pled causes of action for substantive due process.

The Fifth Amendment's Substantive Due Process Clause states no one shall be deprived of life, liberty, or property without due process of law. U.S. Const. Amend. V. It protects fundamental rights deeply rooted in the nation's history and tradition, essential for liberty and justice. *Washington v. Glucksberg,* 521 U.S. 702, 720-21 (1997). When a fundamental right is at stake, the government cannot infringe upon these liberty interests unless the action serves a compelling state interest and is narrowly tailored. *Reno v. Flores,* 507 U. S. 292, 302 (1993).

### 1. <u>Plaintiffs Have a Fundamental Right of Self-Protection Against Unlawful Infringements of their Life and Bodily Integrity by Third Persons</u>

Substantive due process grants a fundamental right against unlawful infringements on life and bodily integrity. [8] The phrase "life, liberty and property"

---

[8] *See Cruzan v. Dir. Mo. Dep't of Health,* 497 U.S. 261, 281 (1990) ("It cannot be disputed that the Due Process Clause protects an interest in life…"); *see also Glucksberg,* 521 U.S. at 720 ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the [right] to… bodily

encompasses this fundamental right. Implicit therein is the prohibition against the government preventing citizens from protecting themselves against such infringements, even if the infringement is indirect via third parties.[9] That is, while the "Due Process Clauses generally confer no affirmative right to governmental aid" for unlawful infringements of life or bodily integrity by a third party if, in the face of such infringement, "the State [undertakes an] affirmative act of restraining the individual's freedom to act on his own behalf" then "the substantive due process analysis. . . trigger[s] the protections of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195, 200 (1987).[10]

      2.  The PREP Act Infringes Plaintiffs' Fundamental Right of Self-Protection

The PREP Act dissolves Plaintiffs' ability to protect themselves from unlawful infringements of their life and bodily integrity because it dissolves the

---

integrity, *Rochin v. California,* 342 U.S. 165 (1952)."); and *Union Pac. Ry. Co. v. Botsford,* 141 U. S. 250, 141 U. S. 251 (1891) ("Before the turn of the century, this Court observed that '[n]o right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.')

[9] *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("the government cannot do indirectly what it cannot do directly").

[10] *See also, e.g., Duncan v. Becerra*, 970 F. 3d 1133, 1144 (2020) (holding that citizens have a fundamental right of self-defense that is "deeply rooted in this Nation's history and tradition' and 'fundamental to our scheme of ordered liberty.'")

causes of action long available to victims of medical infringements of life and bodily integrity.

United States history and tradition has—since before the ratification of the Constitution—recognized the unlawfulness of the infringements on life and bodily integrity that the PREP Act has immunized. Victims of such unlawful infringements have, as a historical rule, primarily been afforded protection at the state level via the right of self-protection in the civil court system, that is, via the right to seek compensation through statutory and common law causes of action sounding in such claims as negligence, medical malpractice, gross negligence, products liability, wrongful death, and assault and battery.[11] The PREP Act affirmatively intervenes to strip Plaintiffs of these means of self-protection.

---

[11] The state law causes of action Plaintiffs would seek to bring in the absence of the PREP Act are primarily "suits at common law" that are analogous to causes of action that existed prior to the adoption of the Seventh Amendment. *Tull v. U.S.*, 481 U.S. 412, 417 (1987); *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) (negligence is suit at common law); *Profitt v. Highlands Hosp. Corp.*, No. 23-5965, 2024 WL 3622448, at *6 (6th Cir. 2024) (Thapar , J., concurring) (medical malpractice is suit at common law); *In re DES Market Share Litig.*, 171 A.D. 352, 355 (N.Y. 4th Dep't 1991) (products liability is suit at common law); *Caroll v. Douglas Cnty., Neb.*, No. 8:21-CV-233, 2021 WL 4504334, at *6 (D. Neb., Oct 1, 2021) (battery is suit at common law); *In re Lands End Leasing, Inc.*, 193 B.R. 426, 433 (Bankr. D. NJ, Mar. 27, 1996) (fraud is suit at common law). In fact, the unlawfulness of medical harms and infringements of bodily integrity is much older than even this would suggest. In English common law it was held that both a servant and his master could sue for damages against a doctor who had employed "unwholesome medicine." *Everad v. Hopkins,* 80 English Reports 1164 (1615); *see also* Hammurabi's Code: "If the doctor has treated a gentleman with a lancet of bronze and has caused the gentleman to die… one shall cut off his hands." *An Introduction to Medical Malpractice in the United States;* NIH: National Library of Medicine, 2024, citing Powis Smith JM. Origin & History of Hebrew Law. Chicago, IL. University of Chicago Press; 1931. "At common law, even the touching of one person by another without consent and without legal justification was a battery." *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 9, pgs. 39-42 (5th ed. 1984). And the informed consent doctrine has become firmly entrenched in American tort

In its Motion to Dismiss [Dkt. 29, pgs. 30-32] the Government argues that the PREP Act's immunization of "covered persons" does not infringe a fundamental right because, according to the Government, Congress may abrogate common law rights without restriction.   The argument leans heavily on the principle stated in *Mondou v. N.Y., New Haven & Hartford R.R. Co.*, 223 U.S. 1, 50 (1912)) that a person does not have a property interest in common law rules and that the "law itself, as a rule of conduct" may be changed at the will of the legislature. [Dkt. 29, pgs. 17-18]

But the authority to change "the law itself, as a rule of conduct", *per se*, does not mean Congress may do so to the extent it means overriding fundamental Constitutional rights, and the *Mondou* Court expressly acknowledged that the legislative branch's authority to abrogate causes of action was constrained to the extent "prevented by constitutional limitations." *Id.* (quoting *Munn v. People of State of Ill.*, 94 U.S. 113, 134 (1876)).

Since *Mondou* was decided more than a century ago, the Supreme Court has repeatedly expressed anxiety over the constitutionality of Congressional

---

law. *See* Dobbs, Keeton, & Owen, § 32, pgs. 189-192; F. Rozovsky, Consent to Treatment, A Practical Guide 1-98 (2d ed. 1990); *see also Cruzan* 497 U.S. at 269 (('Every human being of adult years and sound mind has a right to determine what shall be done with his own body, and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages.'" (citing *Schloendorff v. Soc'y of N.Y. Hosp.*,  105 N.E. 92, 93 (1914) (Cardozo, J.))

dissolutions of common-law rights. Justice Marshall emphasized the constitutional concerns raised when "core" common-law rights are abrogated:

> Quite serious constitutional questions might be raised if a legislature attempted to abolish certain categories of common-law rights in some general way. Indeed our cases demonstrate that there are limits on governmental authority to abolish "core" common-law rights. . . at least without a compelling showing of necessity or a provision for a reasonable alternative remedy.

*Pruneyard Shopping Center v. Robins*, 447 U.S. 74 (1980) (Marshall, J., concurring); *see also, Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 87-88 (1978) (Stewart, J., concurring in the result) (plaintiffs had "a state created right to recover full compensation for tort injuries" which right was a "property right" and the liability limitation in the act under review therefore "impinge[d] on that right by limiting recovery in major accidents"); *and Fein v. Permanent Med. Grp.*, 474 U.S. 892, 894-895 (1985) (White, J., dissenting) ("Whether due process requires a legislatively enacted *quid pro quo* for the common-law or state-law remedy it replaces, and if so, how adequate it must be, thus appears to be an issue unresolved by this Court.").

The PREP Act facially restrains Plaintiffs' "freedom to act on [their] own behalf" by dissolving their state law rights to seek compensation. [12] *DeShaney*, 489

---

[12] Plaintiffs' Complaint articulated the nature of the violation of their fundamental right to self-protection using four alternative formulations. Specifically, Plaintiffs allege the PREP Act abolishes: (1) the category of common law rights encompassing the rights to bring common law tort claims for products liability, negligence, fraud, medical malpractice, and battery; (2) the category of common law rights encompassing the rights to seek tort remedies for grievous bodily

U.S. at 200.  The PREP Act broadly forbids recovery in state court flowing from all "loss[es] caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure."  42 U.S.C. § 247d-6d(a)(1).  The PREP Act's liability immunity covers nearly any action undertaken by a healthcare provider while treating COVID-19.[13] The PREP Act's immunity, as noted in ¶¶ 37-41 of the Complaint [Dkt. 1], only excludes "willful misconduct," a narrowly defined term that permits intentional battery unless harm greatly outweighs the benefit. [Dkt. 1, ¶ 38]; 42 U.S.C. § 247d-6d(c)(1)(A)(i)-(iii). Manufacturers enjoy immunity for "willful misconduct" even if harm is likely to outweigh benefits, unless the Attorney General or Secretary takes action. *See* 42 U.S.C. §247d-6d(c)(1), (5). Additionally, the PREP Act imposes such procedural hurdles on "willful misconduct" claims that no plaintiff has ever succeeded in bringing one. [Dkt. 1, ¶¶ 3, 39-41]; 42 U.S.C. § 247d-6d(c)(1)(A)(i)-(iii).

The PREP Act thus abolishes Plaintiffs' traditional means of self-protection.

---

harm caused by another member of society; (3) the category of common law causes of action that allow citizens to be made whole for damages to their body and bodily autonomy; and (4) Plaintiffs' unqualified rights to live an undiminished physical life, to maintain bodily sanctity, to be free from bodily harm and to life.  [Dkt. 1, ¶¶ 290-91, 297].

[13] *See* 42 U.S.C. § 247d-6d(a)-(c); *see also* March 17, 2020, Emergency Declaration of United States Department of Health and Human Services Secretary Alex M. Azar II and amendments thereto; *see also* [Dkt. 1, ¶¶ 31-33, 36-51]. The PREP Act immunities were previously set to partially expire in October of 2024. Last month, the Secretary extended the PREP Act's immunity through December 31, 2029.  Notice of Amendment, 89 FR 99875-02 (Dec. 11, 2024).

3. <u>The CICP Does Not Provide a Reasonable Alternative Remedy to Satisfy Plaintiffs' Substantive Due Process Rights</u>

The CICP fails to replace the rights lost under the PREP Act. Specifically, as Plaintiffs allege, it is underfunded, has a short statute of limitations, requires high evidence standards, lacks transparency, does not ensure impartial decisions, is understaffed, provides inadequate reviews, does not cover attorney's fees, and under-compensates victims. [Dkt. 1, ¶¶ 54, 56, 58-63, 65, 69, 108, 113]. These allegations demonstrate that the CICP cannot substitute for the common-law rights that the PREP Act removed.

As a result, Plaintiffs have adequately pled that the PREP Act infringes a fundamental right under the Fifth Amendment.

4. <u>The PREP Act Does not Meet Strict Scrutiny</u>

The government must demonstrate that the PREP Act provisions that infringe on Plaintiffs' fundamental rights further a compelling governmental interest. *Reno*, 507 U.S. at 302. There is no compelling interest in (1) stripping citizens of their right to compensation for unlawful harms and (2) offering no adequate replacement. Though the government has a fiscal interest in not compensating Plaintiffs, this is not compelling and is outweighed by the need to compensate suffering Americans for wrongs done to them. Even if the governmental interest were compelling, it is not narrowly tailored. The government could achieve its goals with more reasonable protections for medical

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.                                    CHILDERS LAW, LLC                    Page 23 of 46
                                                                                          Case No. 3:24-cv-00650

providers and better CICP procedures ensuring transparency, opportunity to respond, fair representation, and adequate compensation.

Even under rational basis review, the PREP Act fails. The Act creates markets for the new countermeasures it immunizes, incentivizing development speed but not safety. The resulting countermeasures are more likely to harm Americans than help them, which is irrational.

Because the PREP Act burdens a fundamental right and does not satisfy the strict scrutiny test (or the rational basis test) it violates the Fifth Amendment to the United States Constitution.

### C. Plaintiffs Have Stated a Cause of Action for Procedural Due Process (Count II)

Contrary to the Government's position [Dkt. 29, pgs. 16-30], the Plaintiffs have adequately pled a cause of action for procedural due process violations.

The PREP Act violates Plaintiffs' constitutional rights to procedural due process by stripping them of common-law rights and limiting claims to the CICP's insufficient process. This deprives Plaintiffs of property interests without proper safeguards, failing under *Mathews v. Eldridge*, 424 U.S. 319 (1976). Plaintiffs have significant interests at stake, such as severe medical injuries and financial ruin, aggravated by the CICP's flawed procedures. The Government's interest in efficiency does not justify systematically denying meaningful remedies.

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.                    CHILDERS LAW, LLC                    Page 24 of 46
                                                                                      Case No. 3:24-cv-00650

1.    <u>The Standard for Procedural Due Process Violations</u>

A procedural due process inquiry proceeds in two stages. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' If protected interests are found, the second step is determining what procedures constitute 'due process of law.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) (citing *Mathews,* 424 U.S. 319, 332 (1976)). If the provided procedures do not satisfy due process, then a constitutional violation will have occurred. *Id.*

2.    <u>Plaintiffs have Alleged Protected Property Interests</u>

Plaintiffs have alleged deprivation of four distinct property interests: (1) common-law rights to tort claims like products liability, medical malpractice, and battery; (2) tort remedies for grievous bodily harm; (3) causes of action ensuring redress for damages to bodily autonomy; and (4) entitlement to compensation under the CICP. [Dkt. 1, ¶ 275(a)-(d)].

(a)    *Plaintiffs Property Interest in Traditional Causes of Action*

The first three of the property interests alleged by Plaintiffs concern interests in rights to seek compensation by bringing traditional causes of action. Plaintiffs certainly have a property interest in such self-protection for procedural due process purposes.

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.

Page 25 of 46
Case No. 3:24-cv-00650

As discussed at page 20-21, *supra*, the Supreme Court has long warned against statutes that eliminate long-standing common-law remedies without providing adequate substitutes. *See, e.g.*, *Pruneyard Shopping Ctr.*, 447 U.S. 74 (Marshall, J., concurring). The question, then, is at what point the right to pursue relief for medical injuries done by another has been so sweepingly abrogated that a constitutional property interest has been deprived. Wherever that line may be drawn, the PREP Act has crossed it. As alleged in the Complaint, the breadth of immunity delegated to the Secretary's discretion under the PREP Act is unlawfully broad.

The PREP Act's liability immunity covers almost any conceivable action undertaken by a healthcare provider while treating COVID-19. *See supra* note 13. Plaintiffs' injuries all fall within this coverage, leaving each with only a claim to be adjudicated (someday) by the CICP. The CICP is grossly inadequate to replace the remedies the PREP Act has abrogated. To highlight just a few of the CICP's most procedurally offensive deficiencies: it only applies in the case of *serious physical injury directly caused* by the administration or use of a covered countermeasure; it sets a one-year statute of limitations *from the date of administration or use of the covered countermeasure*, even though the PREP Act results in Americans being treated with novel medical technologies, the harms from which may not become known for years; it suffers from rank procedural deficiencies—most notably the

inability of applicants to respond to or even know of the evidence on which CICP determinations are made; it is perversely underfunded; and, as a factual matter, both its staffing levels[14] and the number and amount of the compensation awards it has granted to applicants are *de minimus*[15] to the point of making the CICP  an illusory compensation scheme.[16]

Defendants' argument fails to grapple with the "constitutional limitations" imposed on Congress' authority to abrogate common-law causes of action as announced in *Mondou* and *Munn*.  *See*, *supra* pgs 20-21; *see also* [Dkt. 29, pgs. 17-20]. The authority relied on by the Government addresses statutes providing narrower immunity and more robust substitute relief compared to the PREP Act. It is thus is not determinative of whether Plaintiffs have been deprived of a protected property or liberty interest in this case.

*Ducharme v. Merill-Nat'l Laboratories,* , for example, examined the Swine Flu Act of 1976, which allowed injured individuals to file any claims without damages caps, provided they named the United States as the defendant. 574 F. 2d 1307 (5th

---

[14] When the COVID-19 PREP Act declaration was issued, the CICP had no direct appropriation and only four staff members, resolving zero claims in all of 2020. Dkt. 1, ¶¶ 69-70; Feb 15, 2024, testimony of Commander George Reed Grimes before the House of Representatives Select Subcommittee on the Coronavirus Pandemic.

[15] As of the March 20, 2024, the last date for which Plaintiffs referenced CICP's online statistics prior to filing their Complaint, the CICP had compensated a grand total of 11 victims nationwide, with an average compensation amount of $3,743.18.

[16] *See* 42 U.S.C. § 247d-6e(a), (b)(1); 42 C.F.R. § 110.42(a); *see also* Dkt. 1, ¶¶ 54, 56, 108, 113,

Cir. 1978); 42 U.S.C. § 247(b)(k)(1)(A)(i) (1976). Claimants filed in the U.S. Court of Federal Claims under the Federal Tort Claims Act (FTCA) but could appeal to an Article III court if dissatisfied with the outcome. The FTCA authorizes federal tort claims in district courts. Additionally, the Swine Flu Act's administrative process offered affected parties a tribunal and hearing with due process akin to Article III courts, including motions, discovery, and trials.

*Keller v. Dravo, Corp.*, examined the Longshore and Harbor Workers' Compensation Act (LHWCA). 441 F.2d 1239 (5th Cir. 1971); 33 U.S.C. § 903(a). The immunities there covered claims for employee disability or death arising from injuries on navigable waters. *Id.* Under the LHWCA, claimants are entitled to a full evidentiary hearing, appellate review, and access to an Article III appellate court. 33 U.S.C. § 919 (c)-(d); 33 U.S.C. § 921(c). The process involves an Administrative Law Judge, hearings, evidence presentation, and witness examination, ensuring due process rights like the right to counsel — all absent in the PREP Act. The CICP compensates a fraction of a percentage of claimants for last-resort medical expenses and only up to $50,000.00 in lost wages, whereas the LHWCA provides comprehensive wage loss benefits, medical benefits, rehabilitation and, crucially, attorney's fees.[17]

---

[17] 33 U.S.C. §§ 901 *et seq.*; Longshore and Harbor Workers' Compensation Act Frequently Asked Questions, U.S. Dep't of Labor, https://www.dol.gov/agencies/owcp/dlhwc/FAQ/lsfaqs

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.

CHILDERS LAW, LLC

Page 28 of 46
Case No. 3:24-cv-00650

Defendants also rely on *Leuz v. Sec'y of HHS*, 63 Fed. Cl. 602 (2005), which is also distinguishable. *Leuz* examined the National Childhood Vaccine Injury Act (NCVIA). Plaintiffs' Complaint highlighted essential protections the NCVIA offers that the CICP lacks, such as evidentiary hearings, judicial appeals, a vaccine injury table, attorney's fees (providing a right to counsel), and nearly five billion dollars in compensation. [Dkt. 1, ¶¶ 82-106]. Crucially, the NCVIA allows claimants to reject VICP awards and seek redress in an Article III Court.

Finally, *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009), cited by Defendants, is inapposite. It dealt with the Protection of Lawful Commerce in Arms Act (PLCAA) that limited immunity to manufacturers or sellers of specific firearms against harm from criminal misuse. *Id.* at 1131. The PLCAA offered limited immunity only for non-defective products when used by criminals and excluded immunity for violations of federal or state sales laws. *Id.* at 1144. If the PREP Act had granted immunity for harm caused solely by the criminal misuse of a Covered Countermeasure that functioned as intended, Plaintiffs might have a fair chance for recovery. *Id.* at 1135.

Thus, the PLCAA is easily distinguished from the PREP Act, since (1) it immunizes only one *novel* type of claim (rather than long-standing, well-recognized torts and breaches of contract), and (2) is extremely narrow in its scope (rather than unlimited in its prospective application). Indeed, the Court in *Ileto*

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.

Page 29 of 46
Case No. 3:24-cv-00650

"repeatedly noted, [that] here congress has left in place a number of substitute remedies. " *Id.* at 1144.

> (b)  *Plaintiffs' Property Interest in Their Right to Compensation Under the CICP*

Plaintiffs have also alleged a property interest in their statutory entitlement to being made whole under the CICP.  [Dkt. 1, ¶ 275 (d)].  Where the government creates a benefit program, an individual will have a property interest in receiving benefits under that program where they "have a legitimate claim of entitlement" under it.  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

An entitlement is "legitimate" where it is non-discretionary. *Brown v. Cassens Transp. Co.*, 675 F.3d 946, 962 (6th Cir. 2012); *see also Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (benefit not a protected entitlement if "government officials may grant or deny it in their discretion."). Compensation under the CICP is mandatory when an applicant satisfies the qualifications.  In particular, the Secretary "shall . . . provide compensation to an eligible individual for a covered injury directly caused by the administration or use of a covered countermeasure."  42 U.S.C. § 247d-6e.

As alleged, each Plaintiff meets the qualifications for CICP compensation. [Dkt. 1, ¶¶ 119-253].  Because compensation under the CICP is mandatory where eligibility requirements are met and the Complaint alleges that Plaintiffs satisfy the CICP's eligibility requirements, Plaintiffs "have a legitimate claim of

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.

CHILDERS LAW, LLC

Page 30 of 46
Case No. 3:24-cv-00650

entitlement" under the CICP and thus have alleged a property interest to its benefits for the purposes of procedural due process. *See Roth*, 408 U.S. at 577.

Defendants argue Plaintiffs did not identify a property interest because they failed to allege deprivation "of the right to pursue CICP claims in accordance with the PREP Act." [Dkt 29, pgs. 20-21]. But Plaintiffs allegations are not that they have been deprived the right to pursue the CICP process but that the CICP process itself is constitutionally deficient. Plaintiffs therefore properly alleged that the CICP is constitutionally deficient in its terms and implementation.

Plaintiffs have a protected property interest in being made whole under the CICP.

### 3. The CICP's 'Procedures' Do Not Constitute Due Process of Law

"Due process is not a technical conception with a fixed content unrelated to time, place and circumstances. Instead, it is a flexible standard that depends on the nature of the interest affected and the context in which the deprivation occurs." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Thus, "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334. At the very minimum, the "essential requirements of due process are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). The right to respond must be "'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333.

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.

CHILDERS LAW, LLC

Page 31 of 46
Case No. 3:24-cv-00650

*Mathews* provided three factors for making this flexible, context-specific determination. *Mathews*, 424 U.S. at 334-335. Specifically, courts should balance the private interest affected by the official action, the risk of an erroneous deprivation of such interest, and the government's interest, including the fiscal and administrative burdens that additional or substitute procedures would entail. *Id.*

### (a)    The Plaintiffs' Private Interests at Stake are Substantial

Plaintiffs have suffered catastrophic medical damage, resulting in disability and, in some instances, death. Absent full compensation, Plaintiffs cannot pay for their healthcare, food, and shelter. The PREP Act has stripped Plaintiffs' ability to address their injuries through historically available common-law remedies. They will thus suffer grievous loss if they cannot obtain a remedy through the CICP. Consequently, the first *Mathews* factor is satisfied.

### (b)    The Risk of Erroneous Deprivation is Substantial

Plaintiffs alleged a substantial risk of erroneous deprivation given the CICP's implementation. Specifically, Plaintiffs alleged:

(1) compensation is limited to serious injury or death, [Dkt. 1, ¶ 54];

(2) proof of causation may be made only via an unreasonably high standard of "compelling. . . medical and scientific evidence,"[18] [Dkt. 1, ¶ 54];

---

[18] 42 U.S.C. § 247d-6e(a), (b)(1); 42 U.S.C. § 247d-6e(b)(4).

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.                    CHILDERS LAW, LLC                    Page 32 of 46
Case No. 3:24-cv-00650

(3) the PREP Act sets an unreasonably short one-year limitation, as its purpose—to expedite novel treatments—reduces the chance that "compelling. . . medical and scientific evidence" of harm would emerge in that timeframe. [Dkt. 1, ¶ 56];

(4) CICP staff anonymously approve or reject claims, limiting recusal requests for conflicts of interest or qualifications. [Dkt. 1,¶ 56];

(5) denied applicants only get a letter stating the reasons for disapproval. 42 C.F.R. § 110.71. However, these "notice of the basis" letters are no more than a few brief paragraphs of conclusory boilerplate.[19] By the time letters are received, applicants can only request reconsideration from another HRSA division, which disallows new documentation. 42 C.F.R. § 110.90;

(6) CICP excludes compensation for attorney fees, pain, suffering, and future earnings; lost employment income is capped at $50,000 per year,[20] [Dkt. 1, ¶¶ 58-63];

(7) Benefits are limited to amounts designated by Congress as an emergency appropriation,[21] [Dkt. 1, ¶ 65];

---

[19] Under Rule 201 of the Federal Rules of Evidence, Plaintiffs ask the Court to take judicial notice of the Third Amended Complaint in *Smith, et al v. United State, et al.*, Case No. 3:23-cv-01425-EEF-KDM in the United States District Court for the Western District of Louisiana. Exhibit 5 of the Third Amended Complaint [Dkt. 49, Dkt. 49-1] is an unredacted version of a "disapproval" letter provided by HRSA regarding one of the plaintiffs in that case.

[20] 42 C.F.R. § 110.81(c).

[21] 42 U.S.C. § 247d-6e(a).

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.                                          CHILDERS LAW, LLC                    Page 33 of 46
                                                                                                              Case No. 3:24-cv-00650

(8) The CICP is underfunded, with HRSA allocating only $5 million in 2022 and $7 million in 2023 respectively, [Dkt. 1,¶ 113]; and

(9) CICP is backlogged and understaffed, compensating only 11 Americans with an average payment of $3,743.18 (as of March 20, 2024). [Dkt. 1, ¶¶ 69, 108].

Defendants argue the small number of COVID-19 claims compensated by the CICP is irrelevant to the question of the adequacy of the CICP process since the CICP website states *ipso facto* that its determinations were based on good cause.[22]  [Dkt. 29, p. 22].

Defendants exaggerate Plaintiffs' pleading duty. The Complaint needs only to "contain factual allegations that raise a reasonable expectation that discovery will reveal evidence" supporting the claim and plausibly suggest relief is appropriate. *Ditthardt v. N. Ocean Condos, L.P.*, 580 F. Supp. 2d 1288, 1290 (S.D. Fla. 2008). The Complaint meets this standard. At this stage, Plaintiffs need not engage with specific determinations of the CICP merely because its website claims those determinations were correct.

---

[22] Defendants' argument is improper at this stage, directing the Court to at least eight distinct webpages not referenced in Plaintiffs' Complaint. Defendants also reference "ten monthly-update Excel spreadsheets available for download", 40 FAQs with questions and answers, and a chart comparing the CICP to the VICP. Defendants ask this Court to rely on evidence well-beyond the pleadings, inviting the conversion of their Motion to one for summary judgment, necessitating discovery.

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.

CHILDERS LAW, LLC

Page 34 of 46
Case No. 3:24-cv-00650

Defendants claim the CICP process is transparent because HHS has established regulations and provides information on its website. [Dkt. 29, pgs. 23-24]. However, Plaintiffs argue that the CICP process undermines claimants' ability to respond to evidence considered during determinations, as it lacks notice of that evidence, discovery opportunities, open hearings, and a record of proceedings.

The CICP's failure to notify claimants of the evidence it considers is fatal; a claimant unaware of this evidence lacks meaningful notice and an opportunity to respond. *See Loudermill*, 470 U.S. at 546 (minimum due process requirements are notice and an opportunity to respond); *see also Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (the Due Process Clause requires the opportunity to be heard at a meaningful time and in a meaningful manner).

Defendants argue that naming the CICP Director resolves anonymity issues for staff. This is inadequate. CICP staff anonymity erroneously prevents claimants from challenging unqualified or conflicted analysts. *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982). Defendants state that the CICP team has now expanded to over thirty-five full-time anonymous members. Revealing the director's name does not address anonymity shortcomings.

Defendants argue the CICP's reconsideration process removes the risk of errors. [Dkt. 29, pgs. 24-25]. De novo judicial review can cure due process violations, *Halchak v. Dorrance Twp. Bd. of Supervisors*, 646 F. Supp. 3d 571, 593

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.                    Page 35 of 46
                                                  Case No. 3:24-cv-00650

(M.D. Pa. 2022), but the PREP Act precludes judicial review of CICP decisions. 42 U.S.C. § 247d-6e(b)(5)(C); 42 C.F.R. §110.92. Reconsideration occurs within the Health Systems Bureau, the CICP's parent bureau. 42 C.F.R. §110.90(c). Thus, CICP regulations require that decisions from the Health Systems Bureau be reconsidered by a different section of the same bureau.

 CICP regulations require a review by an independent "qualified panel", but the practical implications of this review remain unclear. *Id.* This raises concerns about lack of impartiality, that is, the "fox in the henhouse" syndrome. Like the initial review, no hearing occurs, no record is made, and only a boilerplate letter is issued to the claimant by way of a "determination." 42 C.F.R. § 110.90.

Defendants argue CICP's slow processing does not pose a risk of wrongful deprivation. [Dkt. 29, pgs. 25-26]. They claim the CICP's four staff members were unprepared at the pandemic's start, backlogged by claims. However, CICP has now expanded staffing to over thirty-five full-time employees and made improvements to include online claim status checks and a chat function. As a result, Defendants assert the CICP has significantly accelerated its claims resolution process.

But Defendants do not claim that the CICP has resolved its backlog or is processing claims promptly. The adequacy of CICP's staffing and processing times are factual issues inappropriate for a motion to dismiss. When evaluating a Rule

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.

CHILDERS LAW, LLC

Page 36 of 46
Case No. 3:24-cv-00650

12(b)(6) motion, courts accept the allegations in the complaint as true. *Douglas v. United States*, 814 F.3d 1268, 1274 (11th Cir. 2016).

Defendants concede the breathtaking fact that the CICP began the pandemic understaffed, with only four staff members lacking such basic tools as online claims status or a website chat function. The CICP's intended task was vast, ostensibly servicing hundreds of millions of Americans treated via a covered countermeasure, as alleged in the Complaint. [Dkt. 1, ¶ 110].

Defendants argue the CICP's non-adversarial nature does not compromise due process. While true that not all proceedings need to be adversarial to meet due process requirements, greater procedural due process <u>is</u> necessary when critical interests are at stake. *See Goldberg v. Kelly*, 397 U.S. 254, 262-63 (1970) ("The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss.'").

Here, the Plaintiffs and other claimants have suffered catastrophic medical damage, resulting in disability and sometimes death. Plaintiffs are unable to pay for their healthcare, food, and shelter. The PREP Act has abolished Plaintiffs' ability to address these needs through historically available common-law remedies. Absent a procedurally robust remedy through the CICP, Plaintiffs are "condemned to suffer grievous loss[es]." *Id.*

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.                    CHILDERS LAW, LLC                    Page 37 of 46
                                                                                      Case No. 3:24-cv-00650

The CICP lacks transparency in decision-making. Important decisions require due process, allowing confrontation and cross-examination of witnesses. *Id.* at 269. The CICP's process is an expert fact-finding one that determines whether there is "compelling … medical and scientific evidence" showing a serious injury or death caused by a covered countermeasure. 42 U.S.C. § 247d-6e. However, the CICP's evidence-intensive[23] fact-finding fails to inform claimants of the evidence it considers, nor allow them to confront or challenge witnesses or evidence.

Such a process is facially inadequate.

Finally, Defendants argue the CICP's funding limitations raise no constitutional concerns, claiming from outside the four corners it has never failed to pay a compensable claim due to lack of funds, and any suggestion that it will run out in the future is speculation that cannot support a constitutional claim. [Dkt. 29, p. 26]. However, Plaintiffs alleged that the CICP (1) <u>has</u> failed to pay tens of thousands of compensable claims, (2) <u>has not</u> paid claims in constitutionally adequate amounts, and (3) these failures stem at least partly from insufficient funding.

The CICP's website data may not *explicitly* betray its failure to pay compensable claims (an unlikely scenario), but that establishes nothing at this

---

[23] *See* [Dkt. 1,¶ 79].  In his eight-page Congressional testimony describing the CICP process, Commander Grimes referenced the word "evidence" in its legal context seven times.

stage. The issue of CICP's funding reliability and its adequacy to meet due process requirements is a factual matter that cannot be resolved on dismissal for failure to state a cause of action. *See Douglas*, 814 F.3d at 1274 (courts accept allegations in the complaint as true when evaluating a Rule 12(b)(6) motion).

In sum, Plaintiffs properly alleged that the CICP, both on its face and as applied to COVID-19, imposes a constitutionally unacceptable risk of erroneous denials on applicants. Thus, the second *Mathews* factor also weighs in favor of a finding that the CICP does not provide due process.

### (c) The Government's Administrative Burden Would Not be Excessive

The final Mathews factor examines the government's interest, including the function and the fiscal burden of a new procedural requirement. *Mathews*, 424 U.S. at 335. HHS would face an increased burden if it had to implement a compensation scheme to help the patient-victims of America's COVID-19 response. However, this burden is not excessive, as the scheme is necessary because the PREP Act has stripped millions of Americans of their common-law rights.

The Government has misstated the standard to be considered under the third *Mathews* factor. [Dkt. 29, p. 27]. The Government argues in favor of the proposition that it is interested in "maintaining PREP Act immunity." [*Id*.]. But the third *Mathews* factors asks about the "fiscal and administrative burden that the additional substitute procedural requirement would entail." *Mathews*, 424 U.S. at

335. In other words, the third *Mathews* factor inquires about the cost to the government to fix the CICP, *i.e.* the deficient process in question. It does not ask—as the Government seems to think—about the consequences of invalidating the entirety of the statute in which the deficient process is codified.

Consequently, the third *Mathews* factor also favors finding that the CICP does not provide due process. Plaintiffs have adequately identified a protected property interest and have adequately alleged that the procedures under the CICP do not satisfy due process of law. Therefore, Plaintiffs have stated a cause of action for a violation of procedural due process.

### 4.    The PREP Act is Unconstitutionally Vague

The Government also argues that the PREP Act does not violate procedural due process because it is not unconstitutionally vague. [Dkt. 29, pgs. 28-30]. The Government is incorrect; the PREP Act <u>is</u> unconstitutionally vague.

Although the Plaintiffs' Complaint repeatedly alleges that the PREP Act fails to provide injured citizens notice of which claims are immunized or barred, the Government, missing the point entirely, attempted to rebut that argument and in the process confirmed the Plaintiffs' point ("<u>immunity cannot apply unless and until the Secretary issues such a declaration, which by statute must delineate the scope</u>") [Dkt. 29, p. 29]:

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.



Page 40 of 46
Case No. 3:24-cv-00650

In other words, *as the Government admitted*, the PREP Act's text contains no explicit immunity, scope, countermeasures, diseases or health conditions, time period, or geographic area, nor does it even identify which persons are covered. All these critical elements defining which claims are immunized, the immunity's scope, which parties and products are immunized, and when, is entirely left up to the Secretary of HHS to arbitrarily decide whenever and how often he wishes. Then, for good measure, the PREP Act purports to shield those arbitrary and capricious decisions from judicial review.

Strikingly, the Secretary exceeded the scope of his authority under the PREP Act. As stated in the Motion to Dismiss:

> [The Secretary] defined "Covered Countermeasures" broadly to include: "any antiviral, any other drug, any biologic, any diagnostic, any other device, or *any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19*, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product."

[Dkt. 29, p. 5] (emphasis in original).

Nothing in the PREP Act suggests that Congress intended for the Secretary to *categorically* define covered countermeasures and covered persons instead of individually. The PREP Act's text strongly suggests the opposite: that the Secretary <u>must</u> specifically identify each covered countermeasure and each covered person. For example:

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.



Page 41 of 46
Case No. 3:24-cv-00650

**(a) Liability protections**

**(1) In general**

Subject to the other provisions of this section, <u>a covered person</u> shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of <u>a covered countermeasure</u> if a declaration under subsection (b) has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d.

Throughout the PREP Act, the statutory language refers to covered countermeasures in singular terms, such as "a", "the", and "such" covered countermeasure (nearly always singular), and so forth. Perhaps most compelling, subsection (b)(2) requires the Secretary to "identify, <u>for each covered countermeasure specified in the declaration</u>," various limitations on the scope of the immunity.

Nothing in the PREP Act suggests Congress authorized the Secretary to create vast categories of covered countermeasures without any statutory guidance encompassing virtually any device, drug, or procedure used to treat COVID-19.

The Supreme Court's major questions doctrine was recently reaffirmed in the pandemic's wake, rendering the breadth of the Secretary's Emergency Declarations unconstitutional. The Court explained the Doctrine as follows:

> Agencies have only those powers given to them by Congress, and enabling legislation is generally not an open book to which the agency may add pages and change the plot line. We presume that "Congress intends to make major policy decisions itself, not leave those decisions to agencies."

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.


CHILDERS LAW, LLC

Page 42 of 46
Case No. 3:24-cv-00650

> Thus, in certain extraordinary cases, both separation of powers principles and a practical understanding of legislative intent make us reluctant to read into ambiguous statutory text the delegation claimed to be lurking there. To convince us otherwise, something more than a merely plausible textual basis for the agency action is necessary. The agency instead must point to clear congressional authorization for the power it claims.

*West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 723 (2022) (cleaned up).

The Government's interpretation of the PREP Act, which authorizes the Secretary of Health and Human Services (HHS) (or "Secretary") to grant broad immunity for entire categories of countermeasures and entities, lacks statutory support. Courts require "clear congressional authorization" for agency actions with "vast economic and political significance." Such significant authority must be explicit, especially when it can alter legal rights nationwide. The PREP Act's language indicates a much narrower authority, meaning Congress intended the Secretary to immunize specific countermeasures and "covered persons" case-by-case, rather than granting sweeping immunity broadly.

The PREP Act's language focuses on specific determinations about "covered countermeasures" and "covered persons," implying that Congress expected the Secretary to make particularized decisions, not blanket grants of immunity. The PREP Act defines "covered countermeasures" as certain drugs, devices, and biological products and allows the Secretary to designate specific countermeasures related to a public health emergency. 42 U.S.C. § 247d-6d(i)(1). Similarly, it defines

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.

Page 43 of 46
Case No. 3:24-cv-00650

"covered persons" as certain categories of individuals or entities, such as manufacturers or distributors, directly involved in producing or administering these countermeasures. 42 U.S.C. § 247d-6d(i)(2). This targeted language suggests that the Secretary's authority was meant to be tailored, based on the unique risks and benefits of specific countermeasures or the role of particular entities, rather than sweeping determinations covering broad classes of actors and products.

Interpreting the PREP Act as authorizing blanket immunity for all persons involved with any countermeasure related to COVID-19 represents a vast expansion of agency power that Congress did not authorize. Thus, the PREP Act is unconstitutionally vague, and the Secretary has overstepped his authority.

## III.    CONCLUSION

Thus, and for the reasons set forth above, the Court should deny the Government's Motion to Dismiss.

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.

CHILDERS LAW, LLC

Page 44 of 46
Case No. 3:24-cv-00650

Dated: January 10, 2025.



**CHILDERS LAW, LLC**

2135 NW 40th Terrace, Suite B
Gainesville, Florida 32605
tel. 866-996-6104 | fax 407-209-3870

*/s/ Seldon J. Childers*
Seldon J. Childers
Florida Bar No. 61112
Charles H. Hardage
Florida Bar No. 76917
jchilders@smartbizlaw.com
chardage@smartbizlaw.com
notice@smartbizlaw.com
*Attorneys for all Plaintiffs*

*/s/ Erik Luckau*
Erik Luckau
D.C. Bar No. 460494
Luckau Legal PLLC
1629 K St. NW, Suite 300
Washington, D.C. 20036
Phone: 202-413-4167
erik.luckau@gmail.com
*Attorney for Moms for America*



## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

filed with the Clerk of the Court using the Court's CM/ECF system, which caused

a copy to be served upon all counsel of record on January 10, 2025, to the following:

Jeremy S.B. Newman, Esq.
Brian M. Boynton, Esq.
Eric B. Beckenhauer, Esq.
Federal Programs Branch
U.S. Department of Justice
1100 L. Street, NW
Washington, DC 20005
jeremy.s.newman@usdoj.gov

*Attorneys for Defendants*

  /s/ Seldon J. Childers

*Attorney for Plaintiffs*

*Response to Motion to Dismiss*
Moms for America v. HHS, et al.



Page 46 of 46
Case No. 3:24-cv-00650